STOLARUK CORPORATION v CENTRAL NATIONAL INSURANCE
COMPANY OF OMAHA

Docket No. 147168. Submitted March 8, 1994, at Lansing. Decided
   August 15, 1994, at 9:05 A.M. Leave to appeal sought.

   Stolaruk Corporation brought an action in the Macomb Circuit
   Court against Central National Insurance Company of Omaha,
   Strada Asphalt Paving Company, and others, seeking to recover
   costs incurred by Stolaruk in complying with a directive of the
   Department of Natural Resources to remediate diesel fuel
   contamination at a Groveland Township parcel of property
   that, along with parcels in Rochester Hills and Southfield,
   Stolaruk had sold to Strada. A prior action between Stolaruk
   and Strada concerning the sale of the parcels had concluded in
   the entry of a consent judgment by which Stolaruk and Strada
   agreed to release one another from liability relating to then
   known or future causes of action involving the parcels, and by
   which Strada agreed to indemnify Stolaruk for liability relating
   to governmental claims of toxic pollution. Central National had
   been Stolaruk's liability insurer. The court, Robert J. Chrza-
   nowski, J., granted summary disposition for Central National
   and Strada. Stolaruk appealed.

   The Court of Appeals *held:*

   1. Stolaruk is barred from pursuing a claim against Central
   National because Stolaruk, which was under an obligation to
   preserve Central National's rights of subrogation under the
   contract of insurance, destroyed Central National's right of
   subrogation as against Strada when Stolaruk released Strada
   from liability for known or unknown causes of action pertain-
   ing to the parcels.

   2. The indemnification agreement and other provisions in the
   consent judgment clearly indicate that Strada agreed to indem-
   nify Stolaruk for liability from government claims of toxic

REFERENCES

Am Jur 2d, Contribution §§ 22, 53, 69; Insurance §§ 1794, 1795,
   1810, 1813.

Tortfeasor's general release of cotortfeasor as affecting former's
   right to contribution against cotortfeasor. 34 ALR3d 1374.

pollution only with respect to the Rochester Hills parcel. The Groveland Township parcel is not covered by the indemnification agreement.

3. The mutual release is not rendered invalid by § 12d of the Environmental Response Act. Parties potentially responsible for environmental contamination under the ERA may be jointly and severally liable to the government for cleanup or closure costs, notwithstanding any agreement by the parties to the contrary. However, the parties may agree to apportion the costs of any such cleanup between themselves in any manner. they see fit.

Affirmed.

1. INSURANCE — RELEASE BY INSURED — SUBROGATION — INSURER'S LIABILITY.

A release of liability given by an insured to a tortfeasor destroys the insurer's right of subrogation against the tortfeasor and bars an action on the policy by the insured.

2. ENVIRONMENT — ENVIRONMENTAL RESPONSE ACT — APPORTIONMENT OF LIABILITY FOR CLEANUP COSTS.

Private parties jointly and severally liable under the Environmental Response Act to the government for the cleanup or closure costs of environmental contamination may apportion the costs of such cleanup between themselves in any manner they see fit, including the release by one party of the other party's liability (MCL 299.612d; MSA 13.32[12d]).

*D'Agostini, Sable & Ruggeri, P.C. (by William K. Cashen)*, for Stolaruk Corporation.

*Sullivan, Ward, Bone, Tyler & Asher, P.C. (by Thomas M. Slavin)*, and *Provizer, Lichtenstein & Phillips, P.C. (by Randall Phillips and William Selinsky)*, for Central National Insurance Company of Omaha.

*Frank & Stefani (by Sidney L. Frank and David S. Hankus)*, for Strada Asphalt Paving Company, Angelo's Crushed Concrete, Inc., and Dominic Iafrate.

Before: HOOD, P.J., and NEFF and T. E. JACK-SON,* JJ.

HOOD, P.J. Plaintiff, Stolaruk Corporation, sought to recover from defendants Strada Asphalt Paving Company, Angelo's Crushed Concrete, Inc., and Dominic Iafrate (hereafter defendants Strada) costs that it incurred during the cleanup of certain contaminated real property. Stolaruk also claimed that defendant Central National Insurance Company was obligated under a contract of insurance to honor its claim for coverage regarding the same cleanup. The trial court granted summary disposition in favor of defendants Strada and Central National pursuant to MCR 2.116(C)(10), and subsequently denied Stolaruk's motion for rehearing or reconsideration. Stolaruk appeals as of right. We affirm.

In 1986, Stolaruk, which owned various parcels of Michigan real property, agreed to sell Strada certain real property situated in Rochester Hills and Southfield. Additionally, Stolaruk sold Strada the asphalt plants located on these properties, as well as an asphalt plant located in Groveland Township. Strada removed the asphalt plant from the Groveland Township property in the spring of 1986.

Litigation concerning these transactions ensued between Stolaruk and Strada, and a consent judgment was eventually entered on September 28, 1988, in the Macomb Circuit Court. The consent judgment set forth the terms and conditions of the transfer from Stolaruk to Strada of a four-acre parcel of property in Rochester Hills. The consent judgment included a merger and general release whereby each party agreed to release the other from liability relating to then known or future

* Circuit judge, sitting on the Court of Appeals by assignment.

causes of action. Finally, an indemnification provision was included in the consent judgment whereby Strada agreed to indemnify Stolaruk for liability relating to any claim made by a governmental agency concerning the existence of substances exceeding acceptable toxicity levels on certain specified property.

In November of 1989, the Michigan Department of Natural Resources issued a directive to Stolaruk requiring it to investigate and remediate diesel fuel contamination at the Groveland Township property. Stolaruk sought insurance coverage from its provider, Central National, to cover the costs of this endeavor; Central National denied coverage; Stolaruk incurred out-of-pocket expenses in excess of $100,000 in its effort to comply with the DNR directive.

Stolaruk then initiated the present action against Central National[1] and sought to have the court declare the rights and liabilities of the parties under the contract of general liability insurance covering the Groveland Township property. Central National moved for summary disposition, claiming that it was not obligated under the insurance contract because Stolaruk had prejudiced its (Central National's) right to subrogation by executing the comprehensive release contained in the 1988 consent judgment. Stolaruk then filed an amended complaint naming Strada as defendant. Stolaruk claimed that Strada caused the contami-

[1] Central National insured Stolaruk under two separate policies—a primary policy and an umbrella policy. Therefore, because Stolaruk sought to collect on both policies, Central National was treated as two defendants. It is not disputed that Central National would not be obligated under the umbrella policy upon a determination that it was not liable under the primary policy. Indeed, Central National was found not liable on the primary policy. Therefore, for purposes of this appeal, when referring to Central National, we are addressing its obligations under the primary policy, unless the umbrella policy is specifically mentioned.

nation of the Groveland Township property by removing the asphalt plant in 1986 and, further, that the indemnity provision contained in the consent judgment obligated Strada to compensate it for the expenses incurred as a result of the DNR directive. Strada also moved for summary disposition.

The trial court granted summary disposition for defendants Central National and Strada pursuant to MCR 2.116(C)(10), concluding that the indemnification provision contained in the consent judgment applied solely to the Rochester Hills property, and not to the Groveland Township property. Therefore, according to the trial court, Strada was not required to indemnify Stolaruk for expenses incurred during the process of remediating the contamination found to exist at the Groveland Township property. Additionally, the trial court found that Central National was not obligated under the insurance policy because Stolaruk had prejudiced its right to subrogation by executing the general release found in the consent judgment.

First, Stolaruk argues that the trial court erred in concluding that its claim for insurance coverage was barred. Stolaruk contends that the trial court's grant of Central National's motion for summary disposition pursuant to MCR 2.116(C)(10) was improper because important questions of fact existed. We disagree.

Regarding the Groveland Township property, the contract of insurance between Stolaruk and Central National contains a subrogation clause that provides:

8. Subrogation. In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization *and the in-*

> *sured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.* The insured shall do nothing after loss to prejudice such rights. [Emphasis added.]

Further, the contract of insurance expressly provides that no action shall lie against Central National if Stolaruk fails to satisfy all of the conditions set forth therein. Clearly, as a condition precedent to Central National's performance under the contract, Stolaruk was required to take those measures necessary to protect Central National's subrogation rights.

Stolaruk contends that it had no knowledge of the contamination at the Groveland Township property when it executed the general release and, therefore, that it did nothing "after loss" to prejudice Central National's subrogation rights. We find myopic plaintiff's focus on the "after loss" language contained in the subrogation clause. By urging such a narrow interpretation of the subrogation provision, plaintiff seeks to obfuscate the clear import of the clause—namely, that the insured would do nothing to negatively affect the subrogation rights of the insurer.

Moreover, the release contained in the consent judgment provides as follows:

> IV. IT IS FURTHER ORDERED AND ADJUDGED that this Consent Judgment shall merge any and all claims, past, present or future, *known or unknown,* accrued or not accrued, contingent or otherwise, relating to these parties arising out of or relating to the transactions between the Plaintiffs and the Defendants which are the subject matter of the instant litigation.
>
> V. IT IS FURTHER ORDERED AND ADJUDGED that the Consent Judgment shall also constitute a complete release between the Plaintiffs and Defendants *as to all actions, suits, proceedings, claims*

> *and demands whatsoever, known or unknown,*
> contingent or otherwise, either of them at any
> time had or has in respect to any act, cause,
> matter, or thing except those obligations provided
> for in this Consent Judgment. [Emphasis supplied.]

The foregoing language makes it clear that Stolaruk and Strada executed a release covering all known, *unknown,* then existing, or future causes of action. Hence, we find meritless Stolaruk's argument that it did not know of the Groveland Township contamination when it executed the release, because it is clear that the release encompassed all present or future causes of action whether known or unknown. Therefore, having breached a condition precedent by absolutely releasing a potential tortfeasor from liability, Stolaruk destroyed Central National's right of subrogation as against Strada and, thus, Stolaruk is barred from pursuing a cause of action on the insurance policy. *Poynter v Aetna Casualty & Surety Co,* 13 Mich App 125, 128-130; 163 NW2d 716 (1968).

Stolaruk also argues that a question of fact existed regarding whether Strada was indeed responsible for contaminating the Groveland Township property. According to Stolaruk, absent a showing of causation on Strada's part, it cannot be fairly said that Central National even had a right of subrogation against Strada. Thus, Stolaruk contends that it was improper for the trial court to grant summary disposition in favor of Central National on the basis that Stolaruk had destroyed Central National's right of subrogation by entering into the mutual release with Strada. We find this argument unpersuasive.

It is axiomatic that a motion for summary disposition based upon the failure to state a claim tests the legal sufficiency of a claim by the pleadings

alone. MCR 2.116(C)(8). However where matters outside the pleadings are considered, summary disposition is proper only where reasonable minds could not differ. MCR 2.116(C)(10); *Burger v Midland Cogeneration Venture,* 202 Mich App 310, 315-316; 507 NW2d 827 (1993). Below, through its pleadings, Stolaruk maintained that Strada caused the contamination at issue. Central National produced the consent judgment and argued that Stolaruk's action was barred as a result of the release contained in the judgment. The trial court found, and we agree, that Strada and Stolaruk agreed to a complete release concerning *all* present and future causes of action. Accordingly, because it is clear that Stolaruk had executed a general release in favor of the party that it identified in its pleadings as having caused the contamination at the Groveland Township site (Strada), we conclude as did the trial court that Central National was entitled to summary disposition as a matter of law because the release destroyed its right of subrogation against Strada. MCR 2.116(C)(10); *Burger, supra; Poynter, supra.*

It does not matter that Strada denied causing the contamination. Below, Central National and Strada opposed Stolaruk's claims through two separate motions for summary disposition. Paying particular attention to the factual allegations contained in Stolaruk's claim against Central National, and Central National's motion for summary disposition, we find that no record could be developed that would leave open an issue upon which reasonable minds could differ regarding Stolaruk's claim against Central National. Accordingly, notwithstanding Strada's denial, the trial court properly granted Central National's motion for summary disposition. *Amorello v Monsanto Corp,* 186 Mich App 324, 329-330; 463 NW2d 487 (1990).

Next, Stolaruk argues that Strada was required to indemnify it pursuant to the language of the consent judgment. Again, we disagree. The following indemnification provision was included in the consent judgment at Section III(C)(2)(k):

> That, *upon the Closing,* the Defendants herein (Strada) shall forever indemnify and hold harmless Plaintiffs, their successors, assigns, heirs and personal representatives from any and all liability relating to any claim by any governmental agency, State or Federal, person, corporation or any other entity as to the existence of substances which exceeds acceptable toxicity levels, as provided by the Michigan Department of Natural Resources and/or U.S. Environmental Protection Agency, including, but not limited to, fines, penalties, actual attorneys fees or any other monies or obligations expended or incurred and Defendants shall have the absolute duty to defend including retention of legal counsel. [Emphasis supplied.]

We agree with plaintiff that the foregoing constitutes a promise by Strada to indemnify it for costs associated with the remediation of toxic substances. However, contrary to plaintiff's argument, this indemnification agreement is not broad, but rather applies specifically to certain property located in Rochester Hills.

Other language in the consent judgment makes it clear that the parties did not intend the indemnification agreement to be comprehensive. Instead, it is clear from the language of the consent judgment that the parties intended the indemnification provision to apply only to specific parcels of land in Rochester Hills. Indeed, the above-emphasized "Closing" language found in the indemnification clause concerns the Rochester Hills property. Additionally, remarks made by plaintiff's counsel on the record concerning the indemnification agree-

ment further satisfies us that the provision was only intended to apply to the Rochester Hills property. Accordingly, because Stolaruk has failed to establish that Strada agreed to indemnify it for remediation costs concerning the Groveland Township property, it is clear that the above-discussed mutual release precludes Stolaruk from now attempting to seek indemnification from Strada.

Finally, Stolaruk argues that the Environmental Response Act (ERA) renders the release invalid. We disagree. The relevant provision of the ERA, MCL 299.612d; MSA 13.32(12d), provides:

> (1) An indemnification, hold harmless, or similar agreement or conveyance is not effective to transfer from a person that may be liable under section 12 to the state for evaluation or response activity costs or damages for a release or threat of release to any other person the liability imposed under this act. This section shall not bar an agreement to insure, hold harmless, or indemnify a party to the agreement for liability under this act.
>
> (2) This act does not bar a cause of action that a person subject to liability under this act, or a guarantor, has or would have, by reason of subrogation or otherwise against any person.

This section has not been interpreted by either this Court or the Michigan Supreme Court, and unfortunately the language employed by the Legislature lacks clarity. Further, the House Legislative Analysis report concerning this provision does not shed more light on the subject. However, federal courts have addressed similar provisions in the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 USC 9601-9657, and the Leaking Underground Storage Tank Act (LUSTA), MCL 299.831-299.850; MSA 14.528(261)-14.528(280). Of these decisions, we are

inclined to follow *Niecko v Emro Marketing Co,* 973 F2d 1296 (CA 6, 1992).

In *Niecko,* the Sixth Circuit Court of Appeals affirmed a decision of the federal district court for the eastern district of Michigan. *Niecko* involved an interpretation of § 12(6) of the LUSTA, which, for purposes of this discussion, is analogous to the ERA provision at issue here. Because there was no case law interpreting the subsection of the LUSTA, the Sixth Circuit Court of Appeals, as did the district court, looked at cases that interpreted the relevant CERCLA provision.

The *Niecko* court concluded that the relevant LUSTA provision allows a party to release another from financial responsibility arising out of environmental contamination liability. *Id.* In so doing, the *Niecko* court reasoned as follows at 1300-1301:

> However, the better interpretation, and the one used by the district court in the instant case, is that the first sentence provides that *all parties involved are to be jointly and severally liable to the claimant under the statute. Where the claimant is the government, liability may not be transferred. However, as between the parties allegedly responsible, the district court held that liability may indeed be transferred. In other words, the first sentence ensures the clean up is performed and those responsible cannot escape their liability for cleaning the property. However, in terms of financial liability, the parties may allocate the costs of the clean up between them.* Such an interpretation is consistent with the legislative history of CERCLA. [Emphasis supplied.]

Put another way, the *Niecko* interpretation prevents a party from contracting away its liability as against the government, but allows private parties to allocate the financial responsibility for the costs

of the cleanup as between themselves. See also *Mardan Corp v CGC Music, Ltd,* 804 F2d 1454 (CA 9, 1986); *AM Int'l, Inc v Int'l Forging Equipment Corp,* 982 F2d 989 (CA 6, 1993).

We adopt the *Niecko* view as applicable to the present case and hold that private parties potentially responsible for environmental contamination under the ERA may be jointly and severally liable to the government for cleanup or closure costs, notwithstanding any agreement by the parties to the contrary. However, private parties may agree with one another to apportion the costs of any such cleanup between themselves in any manner that they see fit. Accordingly, the release entered into by Stolaruk and Strada is not precluded by § 12d of the ERA. Accordingly, the trial court properly concluded that Stolaruk, having executed the general release, was prohibited from attempting to recoup from Strada the monies expended during its effort to remediate the contamination found at the Groveland Township property. Summary disposition was therefore proper. MCR 2.116(C)(10); *Niecko, supra.*

Affirmed.