HAWORTH, INC v WICKES MANUFACTURING COMPANY

Docket No. 167238. Submitted December 7, 1994, at Grand Rapids. Decided April 21, 1995, at 11:15 A.M.

Haworth, Inc., brought an action in the Allegan Circuit Court against Wickes Manufacturing Company, seeking a declaration that the defendant was a successor of the corporations that had polluted the industrial site that the plaintiff presently owned and that, accordingly, the defendant was liable for the costs associated with the elimination of the environmental contamination at the site. By 1971, Gulf & Western Industrial Products Company (GWIPCO) had acquired the companies that had occupied the present Haworth site since the early 1940s. In 1971, GWIPCO sold the assets of three companies, including the company that then owned the present Haworth site, to Grand Rapids Brass Company pursuant to a sales agreement that provided that the transfer was subject to "all of Seller's obligations, indebtedness and liabilities relating to the business, assets and properties being transferred." In 1975, Grand Rapids Brass under its new name, Crampton Manufacturing Company, sold the present Haworth site to Roland Peterson, who, in turn, sold the site to Haworth in 1980. In January 1976, GWIPCO, which by that time had changed its name to Gulf & Western Liquidating Company, transferred the assets and liabilities of fourteen other divisions to Young & Ottawa Incorporated, which later through various mergers and purchases became the defendant. In December 1976, Crampton sold its assets, which by then did not include the Haworth site, to Gulf & Western Liquidating Company, which was dissolved in 1986. The court, George R. Corsiglia, J., granted summary disposition for the defendant, holding that the defendant was not a successor corporation that was liable for environmental cleanup expenses. The plaintiff appealed.

The Court of Appeals *held:*

1. Although, in general, a purchaser of the assets of another company does not become liable for the seller's obligations, a

REFERENCES

Am Jur 2d, Corporations §§ 2124-2133.
See ALR Index under Corporations.

purchaser, as here, can assume the seller's liabilities by express agreement.

2. The plaintiff's claim based on the rights of a third-party creditor of a seller is inapposite because the plaintiff was never a creditor of either GWIPCO or Grand Rapids Brass.

3. To recover with respect to the claim that the defendant is a successor of GWIPCO such as it will remain liable for pollution abatement costs, the plaintiff must show that there was a substantial continuity between the seller and the purchaser. The facts in the present case do not establish a substantial continuity between GWIPCO and the defendant with respect to the plaintiff's site. GWIPCO sold the plaintiff's site in 1971 to Grand Rapids Brass, and GWIPCO's successor did not sell the fourteen companies to the defendant's predecessor-in-interest until early 1976 or buy the remaining assets of the successor of Grand Rapids Brass until late 1976. Such facts do not establish the necessary substantial continuity. Accordingly, the trial court did not err in declining to embrace any of the plaintiff's common-law theories of liability.

4. The rule prohibiting the transfer of liability found in Michigan's Environmental Response Act, unlike the corresponding rule in the federal Comprehensive Environmental Response, Compensation, and Liability Act, creates no bar to the transfer of liability relative to private claims for indemnity or contribution, but rather merely prevents the use of such transfers of liability as a bar to recovery by the state of costs associated with the abatement of pollution. Accordingly, the trial court properly interpreted the Environmental Response Act as not barring the defendant's use of the defense that the transfer of liability in the sales agreement between GWIPCO and Grand Rapids Brass precluded the plaintiff's claim.

5. The plaintiff's claim that there existed a disputed question of fact regarding whether the sales agreement between GWIPCO and Grand Rapids Brass transferred liabilities has not been preserved for appellate review and, in any event, is without merit.

Affirmed.

1. CORPORATIONS — SUCCESSOR CORPORATIONS — ENVIRONMENTAL CONTAMINATION — SUBSTANTIAL CONTINUITY TEST.

The question whether a successor corporation is liable for the costs of abating the pollution caused by the predecessor corporation is determined by ascertaining whether there is a substantial continuity between the predecessor and successor corporations; factors to be considered in making that determina-

tion include the retention of the same employees and supervisory staff, the retention of the same production facility at the same site, the production of the same product, the retention of the same name, the continuity of assets and general business operators, and whether the purchaser holds itself out to the public as the continuation of the previous enterprise.

2. ENVIRONMENT — ENVIRONMENTAL RESPONSE ACT — LIABILITY TRANSFER RULE.

The rule prohibiting the transfer of liability found in Michigan's Environmental Response Act creates no bar to the transfer of liability relative to private claims for indemnity or contribution, but rather merely prevents the use of such transfers of liability from being used to bar recovery by the state of costs associated with the abatement of pollution (MCL 299.612d[1]; MSA 13.32[12d][1]).

*Warner, Norcross & Judd* (by *John D. Tully, Eugene E. Smary,* and *Mark R. Lange*), for the plaintiff.

*Dykema Gossett* (by *John A. Ferroli* and *James R. Saalfeld*), for the defendant.

Before: MICHAEL J. KELLY, P.J., and CONNOR and J. M. GRAVES, JR.,* JJ.

CONNOR, J. In a declaratory judgment action, plaintiff sought to establish defendant's liability as a corporate successor of polluting corporations for environmental contamination at plaintiff's manufacturing facility. The trial court granted summary disposition for defendant pursuant to MCR 2.116(C)(10). Plaintiff appeals as of right. We affirm.

In 1971, after a series of mergers and name changes, Gulf & Western Industrial Products Company (hereafter GWIPCO) sold the assets of three companies to Grand Rapids Brass Company (hereafter Brass). As part of this transfer, Brass as-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

sumed the liabilities of the three companies it purchased. The sales agreement, provided that the transfer of assets was "SUBJECT, HOWEVER, to all of Seller's obligations, indebtedness and liabilities relating to the businesses, assets and properties being transferred hereunder." In 1976, GWIPCO, which had changed its name to Gulf & Western Liquidating Company, transferred the assets and liabilities of fourteen other divisions to Young & Ottawa Incorporated. After various mergers and purchases, Young & Ottawa became defendant.

Brass, which had by then changed its name to Crampton Manufacturing Company, sold the manufacturing facility site at issue to Roland Peterson in 1975. In 1976, Crampton Manufacturing Company transferred its remaining assets to Gulf & Western Liquidating Company, which dissolved ten years later. In 1980, Roland Peterson sold the site to plaintiff. While plaintiff was operating a plant at the site, the Department of Natural Resources informed plaintiff that the site was contaminated with various waste materials that were leaching into the soil and ground water. The DNR alleged that this contamination had been caused by companies that used the site before plaintiff. Plaintiff filed suit against defendant in 1991 as a result of the DNR's allegations. We find the trial court did not err in granting summary disposition for defendant.

In general, a purchaser of another company's assets does not become liable for the seller's obligations. Henn & Alexander, Laws of Corporations, (3rd ed), § 341, p 967. However, an exception to this general rule occurs where the purchaser expressly or impliedly assumes the seller's liabilities. *Id.* Such a transfer was expressly memorialized in the sales agreement between GWIPCO and Brass, quoted *supra.*

Plaintiff contends that this transfer does not defeat third-party claims against the seller, GWIPCO. Generally, creditors of the seller are not limited to seeking a recovery from the purchaser unless they agree to the transaction. 15 Fletcher, Cyclopedia Corporations (perm ed), § 7116, p 215. However, third-party claims by creditors of the purchaser are not granted the same protection. Plaintiff was never a creditor of either GWIPCO or Brass. Consequently, the argument has no merit.

Implicit in plaintiff's claim is the assumption that defendant is the successor to GWIPCO. Some courts have overridden traditional corporate successor law on the basis of the public policy that favors forcing polluters, rather than the public, to pay for environmental contamination. See, e.g., *United States v Mexico Feed & Seed Co,* 980 F2d 478, 487 (CA 8, 1992). Such courts use the "substantial continuity" test to determine whether a purchaser of the assets is liable for the pollution of a predecessor. *Id.* at 488. The substantial continuity test involves the following factors: (1) retention of the same employees and supervisory staff; (2) retention of the same production facility at the same site; (3) production of the same product; (4) retention of the same name; (5) continuity of assets and general business operations; and (6) whether the purchaser holds itself out to the public as the continuation of the previous enterprise. *United States v Carolina Transformer Co,* 978 F2d 832, 838 (CA 4, 1992).

In the present case, it would be impossible to find the factors for substantial continuity. GWIPCO sold the property and assets to Brass in 1971. Defendant's predecessor-in-interest did not purchase the assets and liabilities of the fourteen other companies until January 5, 1976. Brass' successor sold its assets to GWIPCO's successor on

December 1, 1976, but it had already sold the site to plaintiff's predecessor on November 15, 1975. Accordingly, the trial court did not err when it declined to embrace any common-law theories of liability.

Next, we find the trial court did not err in construing the "no liability transfer rule" of the Environmental Response Act (ERA), MCL 299.612d(1); MSA 13.32(12d)(1), to apply only to claims by the state and not to apply in the present matter. Statutory construction is a question of law. *Smeets v Genesee Co Clerk,* 193 Mich App 628, 633; 484 NW2d 770 (1992). Issues of law are reviewed de novo. *Duggan v Clare Co Bd of Comm'rs,* 203 Mich App 573, 575; 513 NW2d 192 (1994). A trial court's primary goal in construing a statute is to ascertain and give effect to the Legislature's intent. *Farrington v Total Petroleum, Inc,* 442 Mich 201, 212; 501 NW2d 76 (1993).

In explaining its construction of the ERA, MCL 299.612d; MSA 13.32(12d), the trial court opined:

> Because of the similarity between CERCLA[1] and MERA[2] and the fact that MERA was based on CERCLA, any deviation from CERCLA must be interpreted as an intention to create a distinction of significance. In light of this difference, it would be improper to construe MCL 299.612d(1) more broadly than its literal language. By adding the words "to the state," the legislature intended to create a cause of action only for the state, and not private claimants, against parties who transferred their liability under MERA to another.

The relevant provision of the ERA, MCL

---

[1] Comprehensive Environmental Response, Compensation, and Liability Act, 42 US 9601-9657.

[2] Environmental Response Act, MCL 299.601 *et seq.*; MSA 13.32(1) *et seq.*

299.612d(1); MSA 13.32(12d)(1), construed by the trial court, provides:

> An indemnification, hold harmless, or similar agreement or conveyance is not effective to transfer from a person that may be liable under section 12 to the state for evaluation or response activity costs or damages for a release or threat of release to any other person the liability imposed under this act.

This Court has determined that the intent of the ERA is similar to that of the CERCLA, so it is appropriate to examine federal case law interpreting similar issues. *Flanders Industries, Inc v Michigan,* 203 Mich App 15, 21; 512 NW2d 328 (1993). The analogous federal provision, § 107(e)(1) of the CERCLA, 42 USC 9607(e)(1), provides in pertinent part:

> No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any vessel or facility or from any person who may be liable for a release or threat of release under this section, to any other person the liability imposed under this section.

This section has been interpreted to mean that responsible parties may not transfer their CERCLA liability to another party. See, e.g., *United States v Hardage,* 985 F2d 1427, 1433 (CA 10, 1993).

In *Stolaruk Corp v Central Nat'l Ins Co,* 206 Mich App 444, 455; 522 NW2d 670 (1994), this Court adopted the Sixth Circuit Court of Appeals' interpretation of § 12(6) of the Leaking Underground Storage Tank Act (LUSTA), MCL 299.842(6); MSA 14.528(272)(6), found in *Niecko v Emro Marketing Co,* 973 F2d 1296, 1300-1301 (CA 6, 1992). The *Stolaruk* Court applied this interpretation to

§ 12d(1) of the ERA, MCL 299.612d(1); MSA 13.32(12d)(1), and held that a party will be liable to the government for cleanup costs, notwithstanding any agreement to the contrary. *Stolaruk, supra,* 455. However, the *Stolaruk* Court held that § 12d does not preclude private parties from agreeing with one another to apportion cleanup costs as they see fit. *Id.* As the *Stolaruk* Court reasoned, "the *Niecko* interpretation prevents a party from contracting away its liability as against the government, but allows private parties to allocate the financial responsibility for the costs of the cleanup as between themselves." *Id.* at 454-455.

The ERA's no transfer of liability rule differs from the CERCLA model in that the Michigan Legislature added the words, "may be liable under section 12 to the state." MCL 299.612d(1); MSA 13.32(12d)(1). By adding this language, we believe the Legislature intended to limit the no transfer of liability rule to state claims. If the Legislature had intended § 12d to be a complete ban on transfers of liability, it would have adopted the CERCLA's model.[3] The interpretation we adopt is in keeping with the statute's purpose of ensuring that the state is reimbursed. MCL 299.601(e); MSA 13.32(1) (e). Moreover, any other construction would abolish the common-law principles we already have discussed that allow parties to transfer liabilities. Michigan law does not favor this type of construction. *Marquis v Hartford Accident & Indemnity (After Remand),* 444 Mich 638, 652-653; 513 NW2d 799 (1994). In sum, the trial court's interpretation of § 12d of the ERA was correct, and summary disposition was, therefore, proper. *Stolaruk, supra.*

Plaintiff's claim that a question of fact existed

---

[3] For example, the Legislature adopted a no transfer of liability rule in the LUSTA, which does not contain the "to the state" language. MCL 299.842(6); MSA 14.528(272)(6).

regarding whether GWIPCO and Brass' sales agreement transferred liabilities to Brass is unpreserved because it was not raised below. *Vander Bossche v Valley Pub,* 203 Mich App 632, 641; 513 NW2d 225 (1994). At any rate, the argument is meritless. The contract between GWIPCO and Brass provided that the assets transferred were "SUBJECT, HOWEVER, to all of [GWIPCO's] obligations, indebtedness and liabilities relating to the businesses, assets and properties being transferred hereunder." This language clearly and unambiguously reflects that the intent of the parties was for Brass to receive assets subject to all indebtedness, obligations, and liabilities. Plaintiff failed to produce any evidence to the contrary, even though it had the burden of doing so. *Skinner v Square D Co,* 445 Mich 153, 161; 516 NW2d 475 (1994). Summary disposition was proper.

Affirmed.