CORDOVA CHEMICAL COMPANY v DEPARTMENT OF
NATURAL RESOURCES

Docket No. 153752. Submitted December 19, 1994, at Lansing. De-
cided July 14, 1995, at 9:05 A.M. Leave to appeal sought.

Cordova Chemical Company and Aerojet-General Corporation
brought an action in the Court of Claims against the Depart-
ment of Natural Resources, asserting claims of breach of con-
tract, promissory estoppel, and misrepresentation. The action
was brought after the parties were sued in the federal district
court under the Comprehensive Environmental Response, Com-
pensation, and Liability Act of 1980 (CERCLA), 42 USC 9601 *et
seq.*, by parties seeking to recover past and future response
costs incurred with regard to property purchased by the plain-
tiffs in 1977 after the plaintiffs and the defendant entered into
a stipulation and consent order regarding their liability in
connection with extensive chemical contamination that oc-
curred on the property from 1956 through 1976. The court,
William E. Collette, J., granted summary disposition for the
plaintiffs. The defendant appealed by leave granted.

The Court of Appeals *held:*

1. The plaintiffs and the defendant, who entered into the
agreement not as a governmental claimant but a party poten-
tially liable for the cleanup of the site, are not precluded by
subsection 107(e)(1) of the CERCLA, 42 USC 9607(e)(1), from
agreeing with one another to apportion the costs of any
cleanup between themselves in any manner they desire. There-
fore, liability for the costs of the cleanup involved at the site
validly could be transferred between the plaintiffs and the
defendant.

2. The language of the consent order makes it clear that the
parties intended to allocate the costs of the cleanup between
them and to limit the plaintiffs' financial liability to the $600,-

REFERENCES

Am Jur 2d, Contracts § 747; Limitation of Actions § 126; Pollution
Control § 3; Release §§ 29, 30.
See ALR Index under Comprehensive Environmental Response,
Compensation and Liability Act; Discharge or Release; Limitation
of Actions.

000 that the plaintiffs agreed to pay the defendant. The Court of Claims properly found that the defendant's failure to indemnify the plaintiffs constituted a breach of the contract between the parties and that the plaintiffs were entitled to judgment as a matter of law with regard to their claim of breach of contract. The fact that the CERCLA did not exist at the time the consent order was entered into does not prevent a finding that the defendant agreed to assume any financial liability associated with the contamination at the site beyond the $600,000 that the plaintiffs agreed to pay.

3. The exchange of value involved here did not violate Const 1963, art 9, § 18.

4. MCL 21.11; MSA 3.291, as the statute existed at the time of the consent order, does not bar the plaintiffs' contract claim, filed in 1989, because the claim did not accrue until the defendant failed to perform under the contract.

Affirmed.

1. ENVIRONMENT — COSTS OF CLEANUP — TRANSFER OF LIABILITY — APPORTIONMENT OF LIABILITY — GOVERNMENTAL CLAIMANTS — DEPARTMENT OF NATURAL RESOURCES.

The Comprehensive Environmental Response, Compensation, and Liability Act of 1980 provides that all the parties liable for a release or potential release of environmental contaminants are to be jointly and severally liable to the claimant under the act and that, where the claimant is the government, liability may not be transferred; however, as between the parties allegedly responsible, liability may be transferred; the Department of Natural Resources is not precluded from agreeing with a nongovernmental party to apportion the costs of any environmental cleanup between themselves where the department enters the agreement not as a governmental claimant but as a party potentially liable for the cleanup (42 USC 9607[e][1]).

2. RELEASE — SCOPE OF RELEASE.

The scope of a release is governed by its terms and covers only claims intended to be released.

3. CONTRACTS — BREACH OF CONTRACT — ACCRUAL OF CLAIM.

A claim of breach of contract accrues when the promisor fails to perform under the contract.

*Warner, Norcross & Judd* (by *John D. Tully, John V. Byl,* and *Robert J. Jonker*) (*José N. Uranga,* of Counsel), for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *A. Michael Leffler* and *Kathleen L. Cavanaugh,* Assistant Attorneys General, for the defendant.

Before: FITZGERALD, P.J., and GRIBBS and M. J. TALBOT,* JJ.

FITZGERALD, P.J. Defendant, Department of Natural Resources, appeals by leave granted a June 8, 1992, order of the Michigan Court of Claims granting summary disposition for plaintiffs, Cordova Chemical Company and Aerojet-General Corporation. We affirm.

From 1956 through 1976, extensive chemical contamination occurred on property successively owned during that period by Ott Chemical Company and Story Chemical Company. In 1976, Story filed for bankruptcy. Defendant, aware of its potential liability for the cleanup of the site, began negotiations with various companies in an effort to sell the property and limit its liability for cleanup costs.

Plaintiffs entered into negotiations to purchase the site. Liability for cleanup costs became a central issue in the negotiations. On September 12, 1977, defendant's Water Quality Division issued a memorandum indicating that approximately 71,400 cubic yards of contaminated soil had to be removed from the site. By letter dated September 28, 1977, plaintiffs indicated that they wished to define their liability before purchasing the site. A negotiator for defendant informed plaintiffs that approximately 8,161 cubic yards of sludge had to be removed from the property.

On October 13, 1977, plaintiffs and defendant entered into a stipulation and consent order. The

---

* Circuit judge, sitting on the Court of Appeals by assignment.

order provided that defendant would remove 8,700 contaminated drums and 8,000 cubic yards of contaminated soil and sludge and plaintiffs would remove the phosgene from the site and pay defendant the sum of $600,000 to defray defendant's costs in connection with the cleanup of the site. In addition, ¶ 6 of the consent order provided, in part, as follows:

Cordova Chemical Company shall not have any responsibility or liability in connection with any other corrective actions which the Department of Natural Resources or any other governmental agency may hereafter deem necessary or advisable in connection with the contamination emanating from the Story Chemical Corporation property, including, without limitation[,] the creation, maintenance and operation of any purge wells.

Plaintiffs purchased the site on October 14, 1977.

In 1989, the parent company of Ott Chemical Company and the United States filed suits in the federal district court against plaintiffs and defendant under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 USC 9601 *et seq.*, to recover past and future response costs incurred at the site. Defendant filed claims in both cases seeking to hold plaintiffs responsible for the costs of the cleanup. Plaintiffs filed claims against defendant to enforce the stipulation and consent order. The state-law claims were dismissed without prejudice in May 1991 for lack of jurisdiction.

In July 1991, plaintiffs filed a suit against defendant in the Court of Claims asserting claims of breach of contract, promissory estoppel, and misrepresentation. The parties filed motions for summary disposition. In a decision entered on June 8, 1992, the court granted plaintiffs' motion and de-

nied defendant's motion. The court found that, pursuant to the stipulation and consent order, the parties had agreed that plaintiffs would not have any liability other than that which they had agreed to assume and that defendant would indemnify plaintiffs for any liability beyond that which plaintiffs had agreed to assume. The court noted that although defendant agreed to indemnify plaintiffs before the CERCLA was enacted, the agreement was comprehensive and included any liability that could arise in the future. In addition, the court found that plaintiffs were entitled to summary disposition on the ground of promissory estoppel because the evidence showed that plaintiffs relied on defendant's promise of indemnification. The court also found that no genuine issue of fact existed regarding defendant's misrepresentation of the extent of contamination at the site. The court rejected defendant's arguments that plaintiffs' claims were barred by the statute of limitations and that defendant lacked the constitutional and statutory authority to make obligations for indemnification.

On appeal, defendant argues that the Court of Claims erred in finding that the 1977 stipulation and consent order was an indemnification agreement that released plaintiffs from future liability, including any CERCLA liability. Defendant contends that while the language in ¶ 6 of the consent order indicated an intention to release plaintiffs from existing environmental contamination liability, it did not and could not constitute a transfer of future CERCLA liability because (1) the CERCLA created a liability for the cleanup that plaintiff could not transfer, and (2) the stipulation and consent order predated the CERCLA and, therefore, the parties could not have contemplated a transfer of liability under the terms of the CERCLA.

We disagree. Subsection 107(e)(1) of the CERCLA, 42 USC 9607(e)(1), provides:

> No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any vessel or facility or from any person who may be liable for a release or threat of release under this section, to any other person the liability imposed under this section. Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section.

This subsection has not been interpreted by this Court or the Michigan Supreme Court. However, federal courts have addressed this provision, as well as similar provisions in the Leaking Underground Storage Tank Act, MCL 299.831 *et seq.*; MSA 14.528(261) *et seq.*, and this Court has interpreted a similar provision in the Environmental Response Act, MCL 299.612d; MSA 13.32(12d). See *Stolaruk Corp v Central Nat'l Ins Co of Omaha*, 206 Mich App 444; 522 NW2d 670 (1994). Like the *Stolaruk* panel, we are inclined to follow *Niecko v Emro Marketing Co*, 973 F2d 1296 (CA 6, 1992), which reasoned that

> [t]he first sentence provides that all parties involved are to be jointly and severally liable to the claimant under the statute. Where the claimant is the government, liability may not be transferred. However, as between the parties allegedly responsible, . . . liability may indeed be transferred. In other words, the first sentence ensures the clean up is performed and those responsible cannot escape their liability for cleaning the property. However, in terms of *financial* liability, the parties may allocate the costs of the clean up between them. Such an interpretation is consistent with

the legislative history of CERCLA. [*Id.* at 1300-1301. Emphasis in original.]

See also *Mardan Corp v CGC Music, Ltd,* 804 F2d 1454 (CA 9, 1986).

We adopt the *Niecko* view as applicable to the present case. Hence, plaintiffs could not have transferred their liability with regard to a suit *by the government.* However, plaintiffs and defendant, who entered into the agreement not as a governmental claimant but as a party potentially liable for the cleanup of the site, are not precluded from agreeing with one another to apportion the costs of any cleanup between themselves in any manner they see fit. Accordingly, liability for the costs of the cleanup involved validly could be transferred between plaintiffs and defendant. *Stolaruk, supra.*

Defendant argues, however, that, even if it was possible to transfer liability for the cleanup, the parties did not intend to transfer the CERCLA liability that did not exist at the time the parties entered into the consent order. We disagree.

The scope of a release is governed by its terms and covers only claims intended to be released. *Auto-Owners Ins Co v Higby,* 57 Mich App 604; 226 NW2d 580 (1975). In this case, after addressing the obligations of the parties with respect to the pollution problems at the site, the consent order provides in ¶ 5 that "The Cordova Chemical Company shall pay $600,000 to the Department of Natural Resources to abate the pollution problems at the Story Chemical property." Section 6 provides:

It is anticipated that said $600,000 will be suffi-

cient to reimburse the Department of Natural Resources fully for all costs and expenses incurred by it in connection with its obligations hereunder and, in addition, to provide at least $100,000 towards the provision of an alternative water supply system to serve residents and commercial establishments whose water supply wells are or may become affected by the groundwater contaminants emanating from the Story Chemical Corporation property. The Cordova Chemical Company shall not have any liability in the event that the said $600,000 is not in fact sufficient for the intended purposes nor shall it have any responsibility whatsoever in connection with the provision of any water supply system or potable water pending availability of an acceptable water supply system to said residents and commercial establishments.

Cordova Chemical Company shall not have any responsibility or liability in connection with any other corrective actions which the Department of Natural Resources *or any other governmental agency may hereafter deem necessary or advisable in connection with the contamination emanating from the Story Chemical Corporation property, including, without limitation[,] the creation, maintenance and operation of any purge wells.*

The foregoing language of the release makes it clear that the parties intended to allocate the costs of the cleanup between them and to limit plaintiffs' financial liability to $600,000. In other words, defendant agreed to assume *any* financial liability associated with contamination at the site beyond the amount the parties agreed to in the consent order. The Court of Claims found, and we agree, that defendant's failure to indemnify plaintiffs constitutes a breach of the contract between the parties. Hence, the Court of Claims properly determined that plaintiffs were entitled to judgment as

a matter of law with regard to their claim of breach of contract.[1]

Defendant asserts that it cannot be held legally responsible for its commitments to plaintiffs because it lacked the constitutional and statutory authority to make any obligation for such reimbursements. Defendant also asserts that the contractual claims are barred by the statute of limitations. We disagree with both of defendant's assertions.

Defendant relies, in part, on Const 1963, art 9, § 18, which prohibits the state from lending its credit. This provision, however, has no bearing on defendant's commitments to plaintiffs because they are based on the stipulation and consent order that involved a $600,000 payment to defendant. Exchanges of value of this nature do not violate art 9, § 18. See *Advisory Opinion on Constitutionality of 1986 PA 281,* 430 Mich 93; 422 NW2d 186 (1988); *Alan v Wayne Co,* 388 Mich 210; 200 NW2d 628 (1972).

Defendant also contends that it lacked the statutory authority to incur contractual obligations in excess of the legislative appropriation it received for the cleanup at the site. Defendant cites MCL 21.11; MSA 3.291, which, at the time of the stipulation and consent order, stated in part that "no debt shall . . . be contracted, or any financial obligation incurred" by any state office "in excess of the appropriation made by the legislature or authorized by law." This provision set caps on state funding. However, it does not appear that it would serve to bar the claims at issue here. Defen-

---

[1] We need not determine whether the Court of Claims properly granted summary disposition for plaintiffs regarding the claims of promissory estoppel and misrepresentation because the claim of breach of contract provides the remedy plaintiffs are seeking. However, with respect to those claims, we agree with the Court of Claims that no genuine issue of material fact existed.

dant clearly had authority to enter into a consent order setting forth obligations for cleanup at the site. The consent order purportedly limited plaintiff's obligations for cleanup of past contamination at the site. It is this alleged agreement to release plaintiffs from further responsibility for the cleanup that provides the basis for plaintiffs' contractual claims.

Defendant also claims that the six-year period of limitation for claims of breach of contract bars plaintiffs' contract claims because the consent order was executed in 1977 and these claims were not filed until 1989. However, a claim of breach of contract accrues when the promisor fails to perform under the contract. *Vandendries v General Motors Corp*, 130 Mich App 195, 201; 343 NW2d 4 (1983). Hence, plaintiffs' complaint was not barred by the statute of limitations.

Affirmed.