CITIMORTGAGE, INC v MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC

Docket No. 298004. Submitted November 9, 2011, at Detroit. Decided
December 15, 2011, at 9:00 a.m.

> CitiMortgage, Inc., and Federal Home Loan Mortgage Corporation
> (FHLMC) brought an action in the Wayne Circuit Court against
> Sheryll D. Catton, Gregory J. Catton, and Mortgage Electronic
> Registration Systems, Inc. (MERS), as nominee for GMAC Mortgage,
> L.L.C., to quiet title to real property. In 2000, the Cattons purchased
> property in Wayne County, assigning a mortgage to ABN AMRO
> Mortgage Group, Inc., as security for a home loan. In 2001, the
> Cattons refinanced that loan, discharging the original mortgage in
> favor of a new mortgage, which was also assigned to ABN AMRO. On
> July 11, 2002, the Cattons obtained a home-equity loan from GMAC,
> and assigned MERS, as nominee for GMAC, a second mortgage on
> the property. On November 5, 2002, the Cattons refinanced the loan
> they obtained from ABN AMRO in 2001, discharging the 2001
> mortgage in favor of a new mortgage granted to ABN AMRO. On
> August 22, 2005, the Cattons filed for bankruptcy, and their property
> was subsequently sold at a foreclosure sale to FHLMC. FHLMC filed
> suit with ABN AMRO's successor in interest, Citimortgage, to quiet
> title to the property. The Cattons defaulted. The court, Jeanne
> Stempien, J., denied plaintiffs' motion for summary disposition and
> granted MERS's motion for summary disposition. Plaintiffs ap-
> pealed.

> The Court of Appeals *held*:

> 1. Under former MCL 565.25(1) and (4), a first-recorded mort-
> gage had priority over a later-recorded mortgage, and according to
> *Ameriquest Mtg Co v Alton*, 273 Mich App 84 (2006), the use of equity
> by the courts to overcome the plain language of former MCL
> 565.25(1) and (4) was permitted only in the presence of unusual
> circumstances such as fraud or mutual mistake. However, Michigan's
> recording statute was amended by 2008 PA 357, eliminating former
> MCL 565.25(1) and (4). Because the analysis in *Ameriquest* relied on
> those former subsections, *Ameriquest* is no longer controlling.

> 2. Equitable subrogation may be used when a senior mort-
> gagee discharges its mortgage of record and contemporaneously

takes and records a replacement mortgage, so that the lending mortgagee may retain its seniority as against intervening lienholders. However, the lending mortgagee seeking subrogation must be the same lender that held the original mortgage before the intervening interests arose, or a bona fide successor in interest to the original lender, and the application of equitable subrogation is subject to a careful examination of the equities and of any potential prejudice to the intervening lienholders. The trial court is the forum best suited to evaluating any prejudice and the competing equities; therefore, remand was required in this case.

3. The "mere volunteer" rule, which provides that equitable subrogation may not be extended to a party that is a mere volunteer, i.e., one who pays the mortgage but has no interest in the land, does not apply when the new mortgagee and the original mortgagee are the same.

Reversed and remanded.

1. MORTGAGES — PRIORITY OF LIENS — EQUITY — EQUITABLE SUBROGATION.

   Equitable subrogation may be used when a senior mortgagee discharges its mortgage of record and contemporaneously takes and records a replacement mortgage, so that the lending mortgagee may retain its seniority as against intervening lienholders; however, the lending mortgagee seeking subrogation must be the same lender that held the original mortgage before the intervening interests arose, or a bona fide successor in interest to the original lender, and the application of equitable subrogation is subject to a careful examination of the equities and of any potential prejudice to the intervening lienholders.

2. MORTGAGES — PRIORITY OF LIENS — EQUITY — EQUITABLE SUBROGATION — MERE VOLUNTEERS.

   The "mere volunteer" rule, which provides that equitable subrogation may not be extended to a party that is a mere volunteer who pays the mortgage but has no interest in the land, does not apply when the new mortgagee and the original mortgagee are the same.

*Clark Hill PLC* (by *Richard A. Sundquist* and *Matthew W. Heron*) for CitiMortgage, Inc., and Federal Home Loan Mortgage Corporation.

*Schneiderman & Sherman, P.C.* (by *Erin R. Katz* and *Andrew J. Hubbs*), for Mortgage Electronic Registration Systems, Inc.

Before: MURPHY, C.J., and BECKERING and RONAYNE KRAUSE, JJ.

PER CURIAM. Plaintiffs appeal as of right from the trial court's order denying plaintiffs' motion for summary disposition and granting defendant's[1] motion for summary disposition. We reverse and remand for further proceedings.

The facts of this case are not in dispute. On September 6, 2000, Sheryll D. Catton and Gregory J. Catton (the Cattons) purchased property in Wayne County with a mortgage granted to ABN AMRO Mortgage Group, Inc. On May 4, 2001, the Cattons refinanced their loan, discharging the original mortgage in favor of a new mortgage also granted to ABN AMRO. On July 11, 2002, the Cattons obtained a home-equity loan from GMAC Mortgage, L.L.C., granting Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for GMAC, a second mortgage on the property. On November 25, 2002, the Cattons refinanced their 2001 loan, discharging the 2001 ABN AMRO mortgage in favor of another mortgage granted to ABN AMRO. There is no dispute that ABN AMRO was unaware of the MERS mortgage at the time it took the new mortgage even though MERS's mortgage had been recorded. On August 22, 2005, the Cattons filed for bankruptcy, and their property was subsequently sold at a foreclosure sale to Federal Home Loan Mortgage Corporation (FHLMC). FHLMC sued, along with ABN AMRO's successor in interest, CitiMortgage, Inc., to quiet title.

---

[1] Defendants Sheryll D. Catton and Gregory J. Catton defaulted in this case and are not part of this appeal. References herein to "defendant" are to defendant-appellee, Mortgage Electronic Registration Systems, Inc., as nominee for GMAC Mortgage, L.L.C.

The issue in this matter is, as between the two lienholders, which of the two mortgage liens is superior. CitiMortgage holds the refinanced mortgage lien, and defendant holds the second mortgage, which would have been the junior lien but for the subsequent refinancing. More specifically, the issue is whether Citi-Mortgage can place its lien in first priority over defendant's lien through application of the doctrine of equitable subrogation. The trial court concluded that CitiMortgage could not, and this appeal followed. We review motions for summary disposition and questions of law de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999); *Chapdelaine v Sochocki*, 247 Mich App 167, 169; 635 NW2d 339 (2001).

Under Michigan's former race-notice recording statute, MCL 565.25(1) and (4), as amended by 1996 PA 526, a first-recorded mortgage had priority over a later-recorded mortgage, and equity—and therefore equitable subrogation—was used by the courts to overcome the plain language of the statute only in the presence of " ' "unusual circumstances" ' " such as fraud or mutual mistake." *Ameriquest Mtg Co v Alton*, 273 Mich App 84, 93-94, 99-100; 731 NW2d 99 (2006), quoting *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 590; 702 NW2d 539 (2005). See also *Ameriquest*, 273 Mich App at 100 (MURPHY, J., concurring). Other "unusual circumstances" that might have supported the use of equitable relief included a "preexisting jumble of convoluted case law through which the plaintiff was forced to navigate" and misconduct by another party. *Devillers*, 473 Mich at 590 nn 64-65. However, Michigan's recording statute was amended by 2008 PA 357, eliminating the former MCL 565.25(1) and (4). Because the analysis in *Ameriquest* relied on those former subsections, *Ameriquest* is no longer controlling.

That being the case, we conclude that the caselaw on point in Michigan is consistent with Restatement Property, 3d, Mortgages, § 7.3, pp 472-473, which provides as follows:

(a) If a senior mortgage is released of record and, as part of the same transaction, is replaced with a new mortgage, the latter mortgage retains the same priority as its predecessor, except

(1) to the extent that any change in the terms of the mortgage or the obligation it secures is materially prejudicial to the holder of a junior interest in the real estate, or

(2) to the extent that one who is protected by the recording act acquires an interest in the real estate at a time that the senior mortgage is not of record.

(b) If a senior mortgage or the obligation it secures is modified by the parties, the mortgage as modified retains priority as against junior interests in the real estate, except to the extent that the modification is materially prejudicial to the holders of such interests and is not within the scope of a reservation of right to modify as provided in Subsection (c).

(c) If the mortgagor and mortgagee reserve the right in a mortgage to modify the mortgage or the obligation it secures, the mortgage as modified retains priority even if the modification is materially prejudicial to the holders of junior interests in the real estate, except as provided in Subsection (d).

(d) If a mortgage contains a reservation of the right to modify the mortgage or the obligation as described in Subsection (c), the mortgagor may issue a notice to the mortgagee terminating that right. Upon receipt of the notice by the mortgagee, the right to modify with retention of priority under Subsection (c) becomes ineffective against persons taking any subsequent interests in the mortgaged real estate, and any subsequent modifications are governed by Subsection (b). Upon receipt of the notice, the mortgagee must provide the mortgagor with a certificate in recordable form stating that the notice has been received.

Of particular note, comment b to this section of the Restatement provides that "[u]nder § 7.3(a) a senior mortgagee that discharges its mortgage of record and records a replacement mortgage does not lose its priority as against the holder of an intervening interest unless that holder suffers material prejudice." *Id.* at p 474. The associated Reporters' Note, voluminously citing many cases from other jurisdictions, explains that "[c]ourts routinely adhere to the principle that a senior mortgagee who discharges its mortgage of record and takes and records a replacement mortgage, retains the predecessor's seniority as against intervening lienors unless the mortgagee intended a subordination of its mortgage or 'paramount equities' exist." *Id.* at p 483.

For the reasons we discuss later in this opinion, we conclude that § 7.3 of the Restatement, limited to the situations described by the quoted commentary—specifically, cases in which the senior mortgagee discharges its mortgage of record and contemporaneously takes a replacement mortgage, as often occurs in the context of refinancing—is consistent with Michigan precedent. Thus limited, because § 7.3 of the Restatement reflects the present state of the law in Michigan, we hereby adopt it. We caution, however, that the lending mortgagee seeking subrogation and priority over an intervening interest relative to its newly recorded mortgage *must be the same lender* that held the original mortgage before the intervening interest arose; and, furthermore, any application of equitable subrogation is subject to a careful examination of the equities of all parties and potential prejudice to the intervening lienholder.

Our Supreme Court discussed what it called the doctrine of equitable mistake in *Schanhite v Plymouth United Savings Bank*, 277 Mich 33, 39; 268 NW 801 (1936), stating:

It is a general rule that the cancellation of a mortgage on the record is not conclusive as to its discharge, or as to the payment of the indebtedness secured thereby. And where the holder of a senior mortgage discharges it of record, and contemporaneously therewith takes a new mortgage, he will not, in the absence of paramount equities, be held to have subordinated his security to an intervening lien unless the circumstances of the transaction indicate this to have been his intention, or such intention upon his part is shown by extrinsic evidence. [Quotation marks and citation omitted.]

This reflects "the well-settled rule that the acceptance by a mortgagee of a new mortgage and his cancellation of the old mortgage do not deprive the mortgagee of priority over intervening liens." *Washington Mut Bank v ShoreBank Corp*, 267 Mich App 111, 126; 703 NW2d 486 (2005).

In *Washington Mut Bank*, this Court rejected an equitable-subrogation argument made by the plaintiff bank. The plaintiff had provided refinancing on real property that had earlier been encumbered by a first mortgage, which was paid off with the proceeds from the refinancing. However, the property had also been encumbered by two intervening mortgages in favor of other banks before the refinancing. Importantly, and distinguishable from the facts here, the plaintiff was *not* the original lender-mortgagee.[2] *Id*. at 112. After an exhaustive examination of the caselaw regarding equi-

---

[2] The descriptor "original mortgagee" might cause confusion and therefore requires clarification. By "original mortgagee," we mean not only the *originating* mortgagee, but also any bona fide successor in interest. In this case, CitiMortgage was not the original mortgagee, nor was it the new mortgagee at the time of the refinancing transaction. However, ABN AMRO was the original and new mortgagee, and Citi-Mortgage is ABN AMRO's successor in interest, so CitiMortgage stands in the shoes of ABN AMRO for purposes of our analysis.

table subrogation and citing the "well-settled rule" from *Schanhite*, the Court stated:

> [I]n this case, we are not presented with a new mortgage being accepted by the holder of the old mortgage. That is, had the new mortgage been given to Option One Mortgage [the original lender], and Option One was before us rather than plaintiff, *Schanhite* might provide the authority to revive the original mortgage and give the new mortgage the same priority as the one it replaced. . . .
>
> *   *   *
>
> . . . [W]e are unaware of any authority regarding the application of the doctrine of equitable subrogation to support the general proposition that a new mortgage, granted as part of a generic refinancing transaction, can take the priority of the original mortgage, which is being paid off, giving it priority over intervening liens. . . . *Such bolstering of priority may be applicable where the new mortgagee is the holder of the mortgage being paid off . . . . [Id.* at 127-128 (emphasis added); see also *Van Dyk Mtg Corp v United States*, 503 F Supp 2d 876 (WD Mich, 2007) (applying *Washington Mut Bank* and *Schanhite* in granting equitable subrogation under circumstances comparable to those presented by this case).]

*Washington Mut Bank* does not permit us to extend application of the Restatement to cases in which the new mortgagee was not the holder of the original mortgage being discharged through refinancing; consequently, we cannot adopt the Restatement in its entirety. But it does fully support, along with *Schanhite*, applying the Restatement to cases, like this one, in which the new mortgagee seeking priority and subrogation held the original mortgage, and we do so here.

We note also that the refinancing in *Schanhite* actually worked to the benefit of the second mortgagee, because "the property would have been lost to the tax

man" otherwise, so restoring the original lien priority was the equitable outcome for all parties. *Washington Mut Bank*, 267 Mich App at 126-127. Our Supreme Court has noted that "[t]he theory of equitable or conventional subrogation is that the junior lienor's position is left unchanged by the conduct of the party seeking subrogation and that he is not wronged any by permitting subrogation." *Lentz v Stoflet*, 280 Mich 446, 451; 273 NW 763 (1937). Consistent with § 7.3 of the Restatement in the limited form in which we adopt it, a refinanced mortgage maintains the priority position of the original mortgage as long as any junior lienholder is not prejudiced as a consequence.

Finally, we find it necessary to address the "mere volunteer" rule, which provides that equitable subrogation may not be extended to a party that is a mere volunteer, i.e., one who pays the mortgage but has no interest in the land. *Ameriquest*, 273 Mich App at 94-95. Underlying the rejection of the plaintiff bank's equitable-subrogation argument in *Washington Mut Bank* was the Court's conclusion that the plaintiff was a mere volunteer. *Washington Mut Bank*, 267 Mich App at 119-120. The Court observed that

> the doctrine of equitable subrogation does not allow a new mortgagee to take the priority of the older mortgagee merely because the proceeds of the new mortgage were used to pay off the indebtedness secured by the old mortgage. [And] [i]t is clear to us that . . . plaintiff is a mere volunteer and, therefore, is not entitled to equitable subrogation. [*Id.*]

Importantly, *Washington Mut Bank* reflected that the "mere volunteer" rule does not apply when the new mortgagee and the old mortgagee are the same, even in a standard refinancing transaction, otherwise the panel would not have suggested a different outcome had the

plaintiff bank held the original mortgage. See *id*. at 126-127. Indeed, the *Schanhite* Court did not indicate that the rule allowing qualifying mortgagees to retain priority could only be employed on a finding that a mortgagee was not a mere volunteer. And the Restatement contains no such restriction or limitation. We hold that the "mere volunteer" rule has no applicability when the new mortgagee was also the original mortgagee.

We conclude that equitable subrogation is available to place a new mortgage in the same priority as a discharged mortgage if the new mortgagee was the original mortgagee and the holders of any junior liens are not prejudiced as a consequence. We further conclude that the Restatement, in the limited form in which we have adopted it, sets forth a reasonable and proper framework for determining whether junior lienholders have been prejudiced and whether the equities ultimately favor equitable subrogation. Because the trial court is the forum best suited to evaluating any prejudice and the competing equities, including making any relevant factual determinations, we remand this matter to the trial court to do so.

Reversed and remanded to the trial court for further proceedings consistent with this opinion. We direct that no taxable costs shall be awarded to any party under MCR 7.219. We do not retain jurisdiction.

MURPHY, C.J., and BECKERING and RONAYNE KRAUSE, JJ., concurred.