# STATE OF MICHIGAN

# COURT OF APPEALS

CITIMORTGAGE, INC.,

        Plaintiff-Appellant,

v

FMM BUSHNELL, LLC and FMM BUSHNELL
GREAT LAKES, LLC,

        Defendants-Appellees,

and

DR. RAMOTSUMI M. MAKHENE and
VELYNDA R. MAKHENE,

        Defendants.

UNPUBLISHED
December 23, 2014

No. 317422
Genesee Circuit Court
LC No. 12-098516-CH

Before: O'CONNELL, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

        Plaintiff appeals as of right from the trial court's order granting summary disposition in favor of defendant.[1] For the reasons set forth in this opinion, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

---

[1] Plaintiff originally filed suit against ACM Bushnell, LLC, which held one of the mortgage interests at issue in this case. While the case was pending in the lower court, ACM Bushnell transferred its mortgage interest to FMM Bushnell, LLC. The parties stipulated to FMM Bushnell's substitution as defendant. The trial court granted summary disposition in favor of FMM Bushnell, and plaintiff appealed. After plaintiff filed its claim of appeal, FMM Bushnell transferred its mortgage interest to FMM Bushnell Great Lakes, LLC. Plaintiff moved to add or substitute FMM Bushnell Great Lakes as a defendant-appellee and this Court granted the motion, adding FMM Bushnell Great Lakes as a defendant-appellee. See *CitiMortgage, Inc v FMM Bushnell LLC*, unpublished order of the Court of Appeals, entered January 15, 2014 (Docket No. 317422). We use "defendant" to refer to ACM Bushnell, FMM Bushnell, and FMM Bushnell Great Lakes. Dr. Ramotsumi M. Makhene and Velynda R. Makhene are referred to by name.

## I.  BACKGROUND.

This appeal arises from a dispute over the priority of two mortgage interests held on a condominium in Grand Blanc, Michigan, the Canter Creek property, owned by Dr. Ramotsumi M. Makhene and Velynda R. Makhene.  In 2006, the Makhenes wanted to refinance their primary loan on their Canter Creek condominium loan with Countrywide.  They spoke with Thomas Goodrow, who was a commercial relationship manager for Citizens Bank, and the Makhenes were two of his customers.  According to Velynda, someone at Citizens suggested that the Makhenes choose a refinancing lender.  Citizens could then "discharge its mortgage, accept a new mortgage for the same amount . . . so that the refinanced mortgage would be in a first position and Citizens Bank's mortgage would remain in a second position."  Goodrow stated he knew that the Makhenes needed Citizens to release its mortgage on the Canter Creek property so they could refinance, and then Citizens could refile its junior mortgage.

Velynda attested that Citizens agreed to discharge its mortgage, accept a new mortgage, and wait to record its new mortgage until after ABN AMRO recorded its mortgage, so that ABN AMRO's mortgage would be in the first position and Citizens's second mortgage would be in the second position.  Based on that agreement, ABN AMRO agreed to be the new lender.  Record evidence submitted in this matter indicates this was the intent of Citizens.  On March 2, 2006, Goodrow sent an email to his manager, Mark Hunt, and the credit officer, Mark Fleshner.  Goodrow was seeking formal approval to release the first Citizens mortgage on the Canter Creek property while the Makhenes refinanced the Countrywide Mortgage to get a better rate.  The memorandum attached to the email indicates that Citizens planned to release the first Citizens mortgage "and then file again after the financial institution who will be taking out the first mortgage files."  In the memorandum, Goodrow explains that Citizens's collateral position improves as a result of the transaction because the Makhenes must pay down the Countrywide Mortgage by about $17,000, before they can refinance it.  Then on March 3, 2006, Goodrow sent a facsimile to Aqua,[2] an employee in Citizens's Due Diligence Department.  The fax included a "Commercial Sales Support Collateral Release Request" for Nandi Properties.  The request was completed by Goodrow, and in the "reason" section, Goodrow wrote, "[t]he customer wants to refinance their [sic] mortgage.  We will release our 2[nd] [sic] mortgage and then after the customer closes file the mortgage again."  On March 6, 2006, Citizens discharged the first Citizens mortgage.

On March 7, 2006, the Makhenes executed a mortgage on the Canter Creek property with ABN AMRO and secured a $650,000 loan.  The mortgage was not recorded at the Genesee County Register of Deeds until April 4, 2006.  Also on March 7, 2006, the Makhenes executed the second Citizens mortgage on the Canter Creek property to replace the first Citizens mortgage, which had been discharged by Citizens.[3]  The mortgage secured a $524,843.95 loan.

---

[2] Aqua's full name was not provided.

[3] Although the mortgage is dated March 6, 2006, on the first page, the Makhenes' signatures were notarized on March 7, 2007.

Citizens did not wait to record this mortgage until the ABN AMRO Mortgage was recorded. The second Citizens mortgage was recorded on March 15, 2006.

Citizens subsequently assigned the second Citizens mortgage to ACM Bushnell, LLC, who then assigned its interest in the second Citizens mortgage to FMM Bushnell. Plaintiff argued that it is "the successor-by-merger" to ABN AMRO.

Before the instant case was filed, the Makhenes filed a complaint for a declaratory judgment. The Makhenes asserted that both plaintiff and Citizens, at that time, had mortgages on the Canter Creek property. Plaintiff and Citizens have both notified the Makhenes that they intend to foreclose, but neither acknowledged that its mortgage is junior to the other. Consequently, the Makhenes wanted the trial court to decide which mortgage was superior, so they would know which mortgage to redeem if they were unable to redeem both. ACM Bushnell filed a motion for summary disposition pursuant to MCR 2.116(C)(5), asserting that the Makhenes lacked the legal capacity to sue. The trial court granted the motion. The order specifies that the trial court "did not reach any determinations, in fact or law, regarding priority of any mortgages [or] mortgage interests" related to the Canter Creek property. The order states that it is "without prejudice to any mortgage holder filing a separate action to determine priority of mortgages and mortgage interests."

The same day that the previous action was dismissed, July 5, 2012, plaintiff filed a complaint against defendant and the Makhenes "to determine interests in certain lands." Plaintiff asserted that the Makhenes sought to refinance their mortgage with Countrywide in March of 2006 by acquiring a loan from ABN AMRO. ABN AMRO conditioned its loan on the Makhenes arranging for the first Citizens mortgage to be discharged so that ABN AMRO's mortgage would have priority. The Makhenes asked Citizens to do so, and Citizens agreed to discharge the first Citizens mortgage. The Makhenes promised to grant Citizens a replacement mortgage, and Citizens agreed to wait to record this mortgage until after ABN AMRO recorded its mortgage to allow ABN AMRO's mortgage to have priority status. However, due to an error, the second Citizens mortgage was recorded before the ABN AMRO Mortgage. Consequently, the second Citizens mortgage "has inadvertently assumed priority" over the ABN AMRO Mortgage.

Upon plaintiff's information and belief, Citizens assigned the second Citizens mortgage to ACM Bushnell. Plaintiff asserted that under the doctrine of equitable subrogation, the trial court has the power to reestablish the intended priority of the mortgages. Plaintiff asked the court to order defendant to sign a subordination agreement. If defendant refused to do so, plaintiff asked the court to enter a judgment "establishing the priority as the ABN AMRO Mortgage having a first priority, and the 2006 Citizens Bank Mortgage having the second priority." Plaintiff also asked for any other equitable relief required. On October 15, 2012, defendant filed an answer to plaintiff's complaint. Defendant asserted that plaintiff's claim was barred by the statute of frauds, laches, waiver, and estoppel. Defendant also argued that ABM AMRO was a mere volunteer, it did not have to issue a loan to the Makhenes.

On July 8, 2013, the trial court heard the parties' arguments on defendant's motions for summary disposition, which were consistent with their briefs, holding that defendant was entitled to summary disposition. The trial court concluded the race-notice statute applied, and because

Citizens recorded first, its interest has priority. The trial court stated that Citizens "jumped the gun and recorded first," which was "contrary to a verbal agreement." However, the court held that the statute of frauds applied and thus barred plaintiff's claim. In addition, the trial court held that the doctrine of equitable subrogation was not applicable because ABN AMRO, the new mortgagee, was not the original mortgagee. This appeal then ensued.

## II. ANALYSIS.

On appeal, plaintiff argues that the trial court erred in finding as a matter of law that the second Citizens mortgage held by defendant took priority over the ABN AMRO mortgage held by plaintiff under Michigan's race-notice statute, because Citizens was not a good-faith purchaser.

We review de novo a trial court's decision to grant or deny a motion for summary disposition. *McLean v Dearborn*, 302 Mich App 68, 72; 836 NW2d 916 (2013). "A motion under subrule (C)(10) tests the factual sufficiency of a complaint." *Urbain v Beierling*, 301 Mich App 114, 122; 835 NW2d 455 (2013). When reviewing a motion brought under MCR 2.116(C)(10), the trial court can consider "affidavits, pleadings, depositions, admissions, and other evidence introduced by the parties to determine whether no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *McLean*, 302 Mich App at 73. This evidence is considered "in the light most favorable to the opposing party." *Id.*, quoting *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 280; 807 NW2d 407 (2011) (quotation marks omitted).

Defendant argues that plaintiff cannot assert this good-faith purchaser argument because it was not pleaded in plaintiff's complaint. Contrary to defendant's assertions, our review of the record reveals that plaintiff made this argument in its response to defendant's first motion for summary disposition. The trial court addressed it, finding that under the race-notice statute, Citizens's mortgage had priority because Citizens recorded first.

"Michigan is a notice-pleading state." *Johnson v QFD, Inc*, 292 Mich App 359, 368; 807 NW2d 719 (2011); see also *Roberts v Mecosta Co Gen Hosp (After Remand)*, 470 Mich 679, 700 n 17; 684 NW2d 711 (2004). The complaint must set forth "specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend." MCR 2.111(B)(1); see also *Johnson*, 292 Mich App at 368. This Court "will look beyond mere procedural labels and read the complaint as a whole when ascertaining the exact nature of a plaintiff's claims." *Johnson*, 292 Mich App at 368.

While plaintiff does not use the phrase "good-faith purchaser" in its complaint, plaintiff does assert facts supporting a claim that Citizens was not a good-faith purchaser.[4] Consequently,

---

[4] "[A]n assignee stands in the shoes of the assignor, acquiring the same rights and being subject to the same defenses as the assignor." *Coventry Parkhomes Condos Ass'n v Fed Nat Mtg Ass'n*, 298 Mich App 252, 256-257; 827 NW2d 379 (2012). Thus, a finding that Citizens was not a good-faith purchaser would equally apply to defendant. See *id*.

we conclude that plaintiff's complaint sets forth "specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend." See MCR 2.111(B)(1); see also *Johnson*, 292 Mich App at 368.

Plaintiff alleged that the Makhenes told Citizens they wanted to refinance, but could only do so if the refinancing mortgagee was guaranteed the first lien position. Plaintiffs asserted that Citizens agreed to discharge its mortgage, accept a new mortgage from the Makhenes, and then wait to record it until after the refinancing mortgage was recorded. Plaintiff contended that Citizens's "intention throughout the transaction was that it would remain in a second lien position with regard to the [Grand Blanc property.]" In other words, plaintiff frequently asserted in its complaint that Citizens had knowledge of ABN AMRO's interest, and the fact that ABN AMRO's mortgage was supposed to have priority. There is an abundance of documentary evidence that supports this conclusion. Despite this knowledge, Citizens recorded the second Citizens mortgage first. Defendant knew it would be called upon to defend these facts. See *Johnson*, 292 Mich App at 368.

"'Michigan is a race-notice state, and owners of interests in land can protect their interests by properly recording those interests.'" *Richards v Tibaldi*, 272 Mich App 522, 539; 726 NW2d 770 (2006), quoting *Lakeside Ass'n v Toski Sands*, 131 Mich App 292, 298; 346 NW2d 92 (1983). The race-notice statute applies to mortgages. *Church & Church Inc v A-1 Carpentry*, 281 Mich App 330, 345; 766 NW2d 30 (2008). Pursuant to Michigan's recording statute, MCL 565.29, "the holder of a real estate interest who first records his interest generally has priority over subsequent purchasers." *Richards*, *supra* at 539.
MCL 565.29 provides:

> Every conveyance of real estate within the state hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded. The fact that such first recorded conveyance is in the form or contains the terms of a deed of quit-claim and release shall not affect the question of good faith of such subsequent purchaser, or be of itself notice to him of any unrecorded conveyance of the same real estate or any part thereof.

Defendant argues that it is entitled to priority under MCL 565.29 because it is a "subsequent purchaser in good faith and for a valuable consideration" who recorded its property interest first. A bona fide purchaser is a party who acquires an interest in real estate for valuable consideration and in good faith, without notice of a third party's claimed interest. 1 Cameron, Michigan Real Property Law (3rd ed), § 11.20, pp 395-396; see also *Richards*, *supra* at 539. "A bona fide purchaser takes the property free from, and not subject to, the right or interest of that third party." Cameron, *supra* at § 11.20, p 396. The question presented in this case is whether defendant may be considered a good-faith purchaser when it knew that its interest was intended to be subordinate. Defendant does not dispute, and we hold that it is an assignee of Citizens. This Court has stated: "[A]n assignee stands in the shoes of the assignor, acquiring the same rights and being subject to the same defenses as the assignor." *Coventry Parkhomes Condos Ass'n v Fed Nat Mtg Ass'n*, 298 Mich App 252, 256-257; 827 NW2d 379 (2012). Thus, a finding that Citizens was not a good-faith purchaser would equally apply to defendant. See *id*.

-5-

We hold that defendant is not a good-faith purchaser because, as an assignee of Citizens, it had actual knowledge that its mortgage would be secondary to a primary mortgagee. It is undisputed that defendant was aware at all times before it executed its mortgage that the mortgage was intended to be subordinate to a mortgage issued by ABN AMRO.[5] In order to be a good-faith purchaser, a party must acquire an interest in property without notice of a third party's claimed interest. Cameron, *supra* at § 11.20, pp 395-396; see also *Richards*, *supra* at 539. Here, defendant acquired its interest with actual notice of a third party's claimed interest. Because defendant was aware of the existence of a prior unrecorded mortgage on the property, it is not a good-faith purchaser pursuant to MCL 565.34, as said statute states, in relevant part, a purchaser "shall be construed to embrace every person to whom any estate or interest in real estate, shall be conveyed for a valuable consideration, and also every assignee of a mortgage, or lease, or other conditional estate."

In summation, prior to the execution of its mortgage, defendant knew that the mortgage would be subordinate to the mortgage that the Makhenes' owed to ABN-AMRO. Defendants' mortgage is not entitled to priority merely because it was filed first, as defendant does not qualify as a good-faith purchaser. Accordingly, the trial court clearly erred as a matter of law by determining that defendant was entitled to summary disposition.

However, such a finding does not necessitate a finding by this Court that plaintiff is entitled to summary disposition as a matter of law. As defendants correctly assert in their brief, in order to prevail, plaintiffs must also demonstrate that their mortgage was closed first. Defendants contend that they were first-in-time and first to record. While defendants assert in their brief that their mortgage was recorded on March 6, 2006, the signature page indicates that the Makhenes' signatures were notarized on March 7, 2006, the same day as the ABN-AMRO mortgage. Additionally, there was evidence presented that Goodrow represented that defendants' mortgage was executed on March 7, 2006. From this record, we conclude that a genuine issue of material fact exists regarding which entity closed its mortgage first. Hence, we cannot conclude from the record before us that plaintiff is entitled to summary disposition as a matter of law and therefore must remand this matter to the trial court for further proceedings consistent with this opinion. Because we cannot ascertain which entity closed their mortgage first, we next turn to the additional issues raised by plaintiff on appeal.

On appeal, plaintiff also argues that the trial court erred in granting summary disposition with respect to its claim for equitable subrogation. The doctrine of equitable subrogation can sometimes be used to place a new mortgage in the same priority as a discharged mortgage, even if it places the new mortgage in a superior position to other mortgagees. See *CitiMortgage, Inc v Mtg Electronic Registration Sys, Inc*, 295 Mich App 72, 75-81; 813 NW2d 332 (2011). The issue of equitable subrogation often arises in the context of refinancing. *Id.* at 77. This Court

---

[5] In one of Goodrow's internal memos he wrote: "Please file the discharge so that ABN Amro [sic] can get into first position. After this please file our mortgage so that we will be in 2nd [sic] position."

has clearly set forth the test for determining when equitable subrogation can be applied to place a new mortgage in the same position as a discharged mortgage:

> We conclude that equitable subrogation is available to place a new mortgage in the same priority as a discharged mortgage *if the new mortgagee was the original mortgagee* and the holders of any junior liens are not prejudiced as a consequence. [*Id.* at 81 (emphasis added).]

> An "original mortgagee" includes the originating mortgagee and any "bona fide successor in interest." *Id.* at 78 n 2.

> In *CitiMortgage*, this Court also affirmed the "mere volunteer" rule, which provides:

> the doctrine of equitable subrogation does not allow a new mortgagee to take the priority of the older mortgagee merely because the proceeds of the new mortgage were used to pay off the indebtedness secured by the old mortgage. [*CitiMortgage*, 295 Mich App at 80, quoting *Wash Mut Bank, FA v ShoreBank Corp*, 267 Mich App 111, 119-120; 703 NW2d 486 (2005).]

Equitable subrogation applies when "the proceeds of the new mortgage were used to pay off the indebtedness secured by the old mortgage" only when the new mortgagee and the original mortgagee *are the same entity*. *CitiMortgage*, 295 Mich App at 80-81.

In the instant case, this condition was not met. The Makhenes originally had a mortgage with Countrywide. They refinanced and executed a mortgage with ABN AMRO. Countrywide and ABN AMRO are clearly not the same entity. *CitiMortgage*'s test for applying equitable subrogation is clear and unambiguous. *CitiMortgage*, 295 Mich App at 80-81. There is no dispute that the new mortgagee (ABN AMRO) and the original mortgagee (Countrywide) are not the same entity, so equitable subrogation cannot be applied. See *id*. For this reason, plaintiff's claim fails as a matter of law, and to the extent plaintiff argues to the contrary, we find those arguments unpersuasive.

Next, plaintiff claims that the trial court erred in dismissing his breach of contract claim under the statute of frauds and statute of limitations. Summary disposition is appropriate under MCR 2.116(C)(7) if a claim is barred by the statute of frauds or the statute of limitations. When determining whether a party is entitled to judgment as a matter of law pursuant to MCR 2.116(C)(7), "a reviewing court must consider all affidavits, pleadings, and other documentary evidence submitted by the parties and construe the pleadings and evidence in favor of the nonmoving party." *Anzaldua v Neogen Corp*, 292 Mich App 626, 629; 808 NW2d 804 (2011).

The first issue is whether the statute of frauds applies to the agreement at issue in this case. The Michigan Statute of Frauds, MCL 566.132(1), provides that some agreements, contracts, and promises are void unless the "agreement, contract, or promise, or a note or memorandum of the agreement contract, or promise is in writing and signed with an authorized signature by the party to be charged with the agreement, contract or promise." MCL 566.132(2) covers certain agreements made with financial institutions:

An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:

> (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.

> (b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.

> (c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

The parties disagree over whether Citizens's alleged promise to wait to record the second Citizens mortgage falls into one of these categories. This Court has noted that MCL 566.132(2)'s subsections "use generic and encompassing terms to describe the types of promises or commitments that the statute of frauds now protects absolutely." *Crown Tech Park v D&N Bank, FSB*, 242 Mich App 538, 550; 619 NW2d 66 (2000). In *Barclae v Zarb*, this Court reasoned that an action need not expose a bank to a risk of loss in order to constitute a financial accommodation under MCL 566.132. *Barclae v Zarb*, 300 Mich App 455, 468; 834 NW2d 100 (2013), citing *Williams v Pledged Prop II, LLC*, 508 Fed Appx 465, 469 (CA 6, 2012).

We conclude that the agreement at issue constitutes a promise by a financial institution to make a financial accommodation, and thus falls under MCL 566.132(2). The agreement required Citizens to discharge the first Citizens mortgage, rely on the Makhenes' promise that they would reissue Citizens a mortgage for the same amount, and then record the second mortgage with the register of deeds. Although an action need not expose a bank to a risk of loss in order to constitute a financial accommodation under MCL 566.132, Citizens would have been exposed to such a risk when it discharged the first Citizens mortgage without the Makhenes paying the debt that the mortgage secured. See *Barclae*, 300 Mich App at 468. The agreement was for Citizens to do something helpful for the Makhenes that it had no obligation to do. Given this and the statute's use of "generic and encompassing terms to describe the types of promises or commitments that the statute of frauds now protects absolutely," the agreement at issue involved a financial accommodation. See *Crown Tech Park*, 242 Mich App at 550.[6]

Plaintiff claims that even if the statute of frauds does apply, it was satisfied by multiple writings signed by representatives of Citizens that make clear Citizens agreed to record its mortgage after ABN AMRO recorded its mortgage. Plaintiff's argument lacks merit. The

---

[6] We cannot justify excusing ABN AMRO's failure to secure a written subordination agreement on equitable grounds. The parties to the underlying transaction are sophisticated financial institutions. Such entities do not engage in handshake transactions. And standardized subordination agreements are common in the mortgage industry.

documents it provides do not satisfy the statute of frauds requirements because they are "purely internal" documents from Citizens. *Huntington Nat'l Bank v Daniel J Aronoff Living Trust*, 305 Mich App 496, 515; 853 NW2d 481, 491 (2014). "By referring [in MCL 566.132(2)] to a promise or commitment that is itself in writing and signed, the Legislature plainly intended to limit enforcement to a promise or commitment that was actually made." *Id*. Consequently, "[a] purely internal document cannot satisfy the requirements stated under MCL 566.132(2) because such a document could not induce reliance." *Id*. All of the documents that plaintiff relies on as evidence of an agreement between Citizens and the Makhenes are internal memoranda and emails between Citizens employees. Therefore, they cannot be used to satisfy the statute of frauds requirements. See *id*.

Plaintiff additionally argues that the trial court erred in finding that its breach of contract claim was barred by the statute of limitations. Generally, the statute of limitations for a breach of contract action is six years. MCL 600.5807(8); *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 180; 848 NW2d 95 (2014). The statute of limitations begins to run "when the promisor fails to perform under the contract." *Id.*, quoting *Cordova Chem Co v Dep't of Natural Resources*, 212 Mich App 144, 153; 536 NW2d 860 (1995) (quotation marks omitted). Citizens was expected to wait to record the second Citizens mortgage until ABN AMRO recorded its mortgage, so that the ABN AMRO mortgage would be in the first priority position. Citizens failed to perform its promise under the agreement when it recorded its interest on March 15, 2006, before ABN AMRO did on April 4, 2006. Therefore, Citizens breached the agreement on March 15, 2006. See MCL 600.5807(8); *Miller-Davis*, 495 Mich at 180. Plaintiff filed its complaint on July 5, 2012, more than six years after March 15, 2006, so its claim is barred by the statute of limitations. We find plaintiff's assertions and citations to the contrary unpersuasive.

Finally, plaintiff asserts that the statute of limitations was tolled while the Makhenes' lawsuit was pending. The tolling statute, MCL 600.5856(a), provides that the statute of limitations is tolled when the complaint is filed, if the summons and complaint are timely served on the defendant. The tolling statute "permits the tolling of the statute of limitations during the pendency of a prior suit between the parties where the prior action was not adjudicated on the merits." *Sherrell v Bugaski*, 169 Mich App 10, 17; 425 NW2d 707 (1988). In addition, the tolling statute applies to "a renewed action by a different plaintiff who represents the same interest as the original plaintiff," when the prior action was not adjudicated on the merits. *Fed Kemper Ins Co v Isaacson*, 145 Mich App 179, 183-184; 377 NW2d 379 (1985). "A dismissal on motion by the defendants, after judicial consideration . . . is an adjudication on the merits." *Sherrell*, 169 Mich App at 17. An action dismissed without prejudice, or dismissed for a ministerial procedural reason, has not been adjudicated on the merits. *Id.*; *Fed Kemper*, 145 Mich App at 183.

Plaintiff's argument fails because the Makhenes' lawsuit was adjudicated on the merits. See *Fed Kemper*, 145 Mich App at 183-184. The trial court granted ACM Bushnell's motion for summary disposition pursuant to MCR 2.116(C)(5) and agreed that the Makhenes lacked the legal capacity to sue. This constitutes a "dismissal on motion by the defendants, after judicial consideration." See *Sherrell*, 169 Mich App at 17. Even though the order uses the term "without prejudice," it is not in the context of indicating the dismissal was without prejudice. Rather, the order says that it is "without prejudice to any mortgage holder filing a separate action to determine priority of mortgages and mortgage interests." In the previous sentence, the court

makes clear that it "did not reach any determinations, in fact or law, regarding priority of any mortgages [or] mortgage interests." It is evident that the court sought to make clear in its order that it did not make any decision regarding the priority of the mortgages, so a future action seeking to address that issue would not be barred by res judicata. Thus, even if defense counsel agreed to this provision of the order – that the order was "without prejudice to any mortgage holder filing a separate action to determine priority of mortgages and mortgages interests" – that does not mean defense counsel agreed that the Makhenes' lawsuit would be dismissed without prejudice.

Furthermore, plaintiff does not represent the same interest as the previous plaintiffs, the Makhenes. See *Fed Kemper*, 145 Mich App at 183-184. The Makhenes filed their action to resolve the issue of which mortgage had priority. They sought only declaratory relief. On the other hand, plaintiff wanted the court to find that its mortgage should have priority, and to enter an order making it so that plaintiff's mortgage was legally superior to defendant's mortgage. Plaintiff asked the court to do this by ordering defendant to sign a subordination agreement or entering a judgment stating that the ABN AMRO mortgage had priority. These requests for relief demonstrate that the plaintiff did not represent the same interest as the Makhenes. Therefore, the statute of limitations was not tolled during the Makhene lawsuit. See MCL 600.5856; *Fed Kemper*, 145 Mich App at 183-184.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Neither party having prevailed in full, no costs are awarded. MCR 7.219.

/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher