**Mark A. NEHLS, Plaintiff–Appellant,**

v.

**HILLSDALE COLLEGE, et al.,
Defendants–Appellees.**

No. 02–1059.

United States Court of Appeals,
Sixth Circuit.

May 29, 2003.

Before MOORE and ROGERS, Circuit Judges, and KATZ, District Judge.[*]

KATZ, District Judge.

Plaintiff–Appellant Mark Nehls, a former student at Defendant–Appellee Hillsdale College ("Hillsdale" or "College"), started his own student newspaper, *The Hillsdale Spectator* ("*Spectator*"), after resigning as the opinion section editor of *The Hillsdale Collegian* ("*Collegian*"). At both the *Spectator* and the *Collegian*, Nehls offered purportedly critical commentary on the College and its administration. In October 1991, Nehls was expelled for entering into a contract in his role as treasurer of the Hillsdale Student Federation without authorization. Nehls asserts the reasons for his expulsion are pretext and that Appellees entered into a conspiracy to silence his criticism of Hillsdale College and its administration by expelling

him from Hillsdale College and by defaming him as a fraud.

The instant appeal arises from the dismissal and grant of summary judgment in Appellees' favor of Nehls' claims of slander, libel, conspiracy to commit slander and libel, and invasion of privacy. Nehls also appeals the district court's failure to consider his motion to file a third amended complaint. For the reasons set forth herein, we AFFIRM the judgment of the district court.

## I. BACKGROUND

Nehls was an undergraduate at Hillsdale College until expelled in October 1991. Appellees assert that Nehls, as Treasurer of the Student Federation, was expelled for committing the College to an advertising agreement with TCB Publishing ("TCB"), despite the College's express directive not to do so. Under this agreement, TCB was to print and distribute to Hillsdale students folders incorporating the school logo, football schedule, campus map, and commercial advertising. In addition to releasing the use of its copyrighted logo, the College became obligated to confirm its sponsorship of the project with local merchants and make a good faith effort to distribute at least 500 folders to the student body. According to Appellees, after Nehls executed the contract, TCB used the College's purported sponsorship of the project to solicit local merchants for advertising. Nehls denies that he participated in any way with these solicitations and did not even know about them until October 1991 when he was expelled.

Based on the foregoing, the College instituted disciplinary proceedings. Following a disciplinary hearing at which Nehls was represented by counsel, the College

---

[*] The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

determined that Nehls knowingly disobeyed the directive not to enter into the advertising contract, improperly entered into the contract, and compromised the College's intellectual property rights and community goodwill. The College subsequently expelled Nehls.

Nehls denies that the College instructed him not to enter into the advertising agreement with TCB. Instead, Appellant asserts that Appellees George Roche, III, Hillsdale's former president, Carol Barker, Hillsdale's director of student affairs, James Parker, Hillsdale's in-house counsel, and Kenneth Cole. Hillsdale's treasurer, conspired to defame and did defame Appellant for his critiques of the College and its administration. Nehls further asserts that Appellees Ronald Trowbridge, Barrett Kalellis, and Donald Heckenlively were part of the conspiracy and also issued defamatory statements.

As evidence of the alleged defamation and conspiracy, Nehls points to the following. In November 1991 the College, through Appellee Barker, issued a press release regarding Nehls' expulsion ("1991 Barker Press Statement").[1] That same month, Heckenlively, Hillsdale's vice-president for academic affairs, issued a memo to Hillsdale faculty regarding the Nehls incident. In 1996. Appellee Trowbridge, Hillsdale's vice-president for external affairs, made a statement regarding the Nehls incident to *Detroit Free Press* reporters, stating that Nehls was expelled for misrepresenting himself to local businesses. Lastly, on January 6, 2000 and January 8, 2000, Kalellis made two allegedly defamatory statements to Sam Tanenhaus, a *Vanity Fair* reporter.

In November 1999, Tanenhaus began researching an article relating to the suicide of Roche's daughter-in-law. During his research, Tanenhaus apparently also learned about Nehls' controversial expulsion. In January 2000 Tanenhaus contacted Kalellis, a public relations agent for the College, for the College's version of events relating to Nehls' expulsion, as well as for background information relating to the suicide of Roche's daughter-in-law. On January 6, 2000, Kalellis provided an "unoffi-

---

1. The text of the 1991 Barker Press Statement is as follows:

Inaccurate information has been conveyed by the media regarding the expulsion of ... Mark Nehls. The reason for the College's delay, until now, in responding to these inaccuracies owed to the College's desire to protect Mr. Nehls' appeal process. That process has now been completed, both sides represented by legal counsel.

Freedom of speech, as alleged, is in no way an issue in this matter. Rather, the issue is the act of Mark Nehls, student, entering into an unauthorized contract, following which funds were solicited under false representation of Hillsdale College. This was done without College or Student Federation approval.

Eight local businesses were fraudulently solicited for a substantial sum of funds; these businesses were led to believe that their revenue was going to a Hillsdale College authorized project. Mr. Nehls had been informed earlier that approval of the project was denied by the Student Federation and the administration of Hillsdale College, yet he defiantly proceeded.

Mr. Nehls' fraudulent actions have been embarrassing to Hillsdale College and to the local community. Worse, the College is presently engaged in a FreedomQuest campaign to raise $151 million to ensure the independence of the College from government money and government control. Mr. Nehls' actions are harmful to the success of this campaign. The College cannot and should not tolerate such harmful, embarrassing, unauthorized, fraudulent activities and had no choice but to expel Mr. Nehls. (As inaccurate coverage of this story occurred on the front page of the *Hillsdale Daily News* and the *Jackson Citizen Patriot*. Hillsdale College requests equal treatment with front-page placement in these two newspapers).

J.A. 37.

cial" explanation of events. Though the parties dispute precisely what Kalellis said, the gist of the January 6 statement appears to be that Kalellis had some vague familiarity with the expulsion issue from information obtained from the Hillsdale Liberation Organization ("HLO") website.[2] As recounted in Kalellis' deposition:

> I said, you know, I don't know, really, any details about this. I can't speak for the college, but off the record what I surmise is that this kid was trying to fund his alternate newspaper and he made some solicitations to merchants, words to this effect.
>
> But I said, this isn't the College's position. I got to make a couple of phone calls and find out, which is what I did subsequently.

J.A. 678.

After the January 6 correspondence, but before issuance of the "official" College position on January 8, Tanenhaus sent Nehls the following email:

> Frank Maisano ... has been replaced by a PR man from Detroit, who has been most helpful. I asked him for HC's version of Mark Nehls's expulsion. He reported back as follows: You [Mark] "misrepresented himself to local businesses" as being from the campus newspaper and collected money from them; the administration warned you to desist but you continued to solicit funds. This is the reason you were expelled. The administration says that there was no objection to the Spectator itself. Comment?

Appellant's Br. at 6.

On January 8, 2000, Kalellis emailed Tanenhaus with the College's "official" position as follows:

*Regarding the expulsion of Hillsdale College Student Mark Nehls:*

> Freedom of speech, as alleged, was in no way in issue in this matter. Rather, the issue was the act of Mark Nehls, student, entering into an unauthorized contract, following which funds were solicited under false representation of Hillsdale College. This was done without College or Student Federation approval.
>
> Eight local businesses were solicited for a substantial sum of funds; these businesses were led to believe that their revenue was going to a Hillsdale College authorized project. Mr. Nehls had been informed earlier that approval of the project was denied by the Student Federation and the administration of Hillsdale College, yet he defiantly proceeded."

J.A. 484.

Subsequently, *Vanity Fair* published a nine page article, one paragraph of which was relevant to Nehls:

> Not only the faculty was scared. Dissident students ... were dealt strong penalties: the sudden loss of a campus job, bullying sessions with administrators, even expulsion, as happened in the case of Mark Nehls, who started his own newspaper, *The Hillsdale Spectator,* financed by ads he sold to local merchants. After clashing with the administration over censorship and other issues, Nehls was thrown out of Hillsdale on charges, which he strongly denies, of having defrauded local businesses by misrepresenting himself as an official of the college.

J.A. 67–68.

After publication of the *Vanity Fair* article, Nehls filed suit against Appellees

---

2. The HLO apparently is an organization comprised of dissident Hillsdale students, faculty, and alumni.

asserting defamation, conspiracy, and invasion of privacy claims based on the 1991, 1996, and January 6 statements, as well as the *Vanity Fair* article.[3] Upon Appellees' motion to dismiss, the district court: (1) dismissed the defamation claims predicated on the 1991 and 1996 statements based on Michigan's one year defamation statute of limitations;[4] (2) dismissed the defamation claim against Kalellis regarding the January 6, 2000 statement on the basis that Kalellis, as an agent of the College, could not be held individually liable, and noted that notwithstanding the statute of limitations issues, the claims against the other individually named defendants would be subject to dismissal on the same grounds; (3) ruled that the January 6, 2000 statement was not a "republication" of either the 1991 or 1996 statements; (4) dismissed the conspiracy claims for lack of specificity in pleading; (5) dismissed the invasion of privacy claims predicated on the 1991 and 1996 statements based on Michigan's three year statute of limitations; and (6) dismissed the invasion of privacy claims predicated on the January 6, 2000 statement. The foregoing determinations left only a claim for defamation against the College predicated upon the January 6, 2000 statement. After this ruling, Nehls moved for leave to file a third amended complaint,[5] a motion on which the district court never ruled.

The district court subsequently granted summary judgment to the College on the sole remaining defamation claim, and denied Nehls' partial summary judgment mo-

tion as moot.[6] In issuing summary judgment in favor of the College, the district court stated that Nehls had not alleged any damages regarding the January 6 statement, and the January 6 statement was never publicized. The district court also noted that it had previously determined that the *Vanity Fair* article was true. The district court further reasoned that the January 6 statement could not reasonably be regarded as stating facts about Nehls and thus was not actionable. As to the latter point, the district court reasoned that the statement was issued "off the record" and by someone who purported not to be particularly familiar with the expulsion, and was negated by the subsequent issuance of the official College position on January 8. Based on the foregoing, the district court denied Nehls' partial summary judgment motion as moot. After entry of final judgment, Nehls timely filed his notice of appeal on December 20, 2001.

On appeal, Nehls challenges the district court's findings as to the 1991 Barker Press Statement and the January 6 Kalellis statement, and also argues the defamatory aspects of the January 8 statement and the *Vanity Fair* article. Nehls further asserts that the district court abused its discretion by failing to rule on his motion for leave to file a third amended complaint, and also assigns error to the denial of his motion for partial summary judgment.

Appellees argue that we should affirm the district court because, *inter alia:* (1)

---

3. Nehls has not filed suit against either Tanenhaus or *Vanity Fair.*

4. Mich. Comp. Laws § 600.5805(9) provides that "[t]he period of limitations is 1 year for an action charging libel or slander."

5. In his proposed Third Amended Complaint, Nehls attempted to plead his conspiracy claims with further specificity and also added

a breach of contract claim predicated upon the College's alleged duty to maintain the confidentiality of Nehls' student disciplinary records.

6. Nehls moved for partial summary judgment as to the defamatory nature of the January 6 and January 8 statements.

the statements are not defamatory because they are true; (2) even if defamatory, the January 6 and 8 statements are not actionable because they allegedly are absolutely privileged due to Nehls' purported consent; (3) the statements were not negligently made; (4) Nehls has failed to plead and prove damages, as those damages are limited by Michigan's defamation statute, MICH. COMP. LAWS § 600.2911(7); (5) Nehls has testified that he has no reason to believe that his reputation or credibility have suffered; (6) no conspiracy claims can lie in the absence of an underlying tort; (7) a corporate entity cannot conspire with its own agents and employees; and (8) in light of the foregoing, Nehls' summary judgment motion was properly denied and amendment of the complaint would be futile.

## II. DISCUSSION

### A. Standards of Review

#### 1. Dismissal

The Court reviews de novo a district court's grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Pfennig v. Household Credit Servs., Inc.,* 286 F.3d 340, 343 (6th Cir. 2002). In reviewing a Rule 12(b)(6) motion, the Court treats as true all well-pleaded allegations in the complaint and finds dismissal proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief *Downie v. City of Middleburg Heights,* 301 F.3d 688, 693 (6th Cir.2002) (citation omitted). " 'Although the standard for Rule 12(b)(6) dismissals is quite liberal,' the complaint must contain 'either direct or inferential allegations respecting all the material elements' and the allegations must constitute 'more than bare assertions of legal conclusions.' " *Tahfs v. Proctor,* 316 F.3d 584, 589 (6th Cir.2003) (quoting *Scheid v. Fan-* ny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir.1988)).

#### 2. Grant of summary judgment

The Court also reviews de novo a district court's order granting summary judgment. *See Thompson v. Ashe,* 250 F.3d 399, 405 (6th Cir.2001). Summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.;* FED. R. CIV. P. 56(c). The Court must consider the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits in the light most favorable to the non-moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); "However, the party opposing the motion may not rely solely on the pleadings and must adduce more than a mere scintilla of evidence; if the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which the nonmovant has the burden, the moving party is entitled to summary judgment as a matter of law." *Thompson,* 250 F.3d at 405.

#### 3. Denial of summary judgment

"This court's review of an order denying summary judgment is governed by the abuse of discretion standard, *Hanover Ins. Cos. v. American Eng'g Co.,* 33 F.3d 727, 730 (6th Cir.1994); however, if the denial is based on purely legal grounds, then review of the denial is de novo." *Johnson v. Hensley,* No. 02–6041, 62 Fed.Appx. 85, 2003 WL 1795709, 2003 U.S.App. LEXIS 6258, at *3 (6th Cir. March 27, 2003) (citing *Garner v. Memphis Police Dep't.* 8 F.3d 358, 363 (6th Cir.1993)).

#### 4. Leave to amend

A district court's failure to rule on a motion for leave to amend is reviewed for

abuse of discretion. *See Thompson v. Superior Fireplace Co.*, 931 F.2d 372, 374 (6th Cir.1991).

### B. Defamation Claims

■ The crux of Nehls' primary argument on appeal is that he was expelled not for fraud, but rather for entering into a contract without authorization. Nehls therefore reasons that the contested statements are defamatory because they explicitly and/or implicitly convey that Nehls was expelled for fraudulent conduct.[7] Ultimately, the Court does not belabor the convoluted caselaw regarding the numerous issues raised by the parties on appeal because all the defamation claims fail on the fourth prong of the defamation test, *i.e.*, damages.

"Under Michigan law, a plaintiff must establish each of the following four elements to maintain a defamation action: '(a) a false and defamatory statement concerning plaintiff; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm, (defamation per se) or the existence of special harm caused by the publication (defamation per quod).'" *Andrews v. Prudential Sec.*, 160 F.3d 304, 308 (6th Cir. 1998) (quoting *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 217 (6th Cir.1994)).

To his own detriment, Nehls steadfastly maintains that his claims arise as defamation per se and fails to direct the Court to any evidence of damages, even though Appellees strenuously argue the issue. Nehls asserts that his action is predicated on defamatory allegations of fraud, which Nehls asserts is defamation per se. In support of this position, Nehls submits, albeit for the first time on appeal, that the allegedly defamatory statements are tantamount to accusations of larceny by false pretenses, a crime under Michigan law.[8] However, Nehls does not provide any reasoned explanation as to why this Court should so regard the statements. Instead, Nehls merely proffers this assertion in a conclusory fashion, which we find insufficient to establish defamation per se.

Notably, Michigan's defamation statute does not categorize fraud as defamation per se,[9] and at common law defamation per se typically concerns issues of chastity,

---

7. Nehls makes numerous other arguments regarding other allegedly defamatory aspects of the contested statements. Nehls also submits that one or more of the contested statements is a "republication" of the 1991 Barker Press Statement, thus reasoning that the 1991 statement is saved from the defamation statute of limitations. We have considered, but do not address within this opinion, each of those arguments, and merely note that regardless of how the contested statements are characterized, *i.e.*, as explicitly and/or implicitly stating erroneous assertions of fraud, misrepresentation, solicitation, the basis for expulsion, *etc.*, and whether any of the contested statements can fairly be regarded as a "republication" of an earlier statement, the claims all fail due to Nehls' failure to submit any evidence of damages.

8. Under Michigan law, "there are four elements of this offense: '(1) a false representa-

tion as to an existing fact; (2) knowledge by defendant of the falsity of the representation; (3) use of the false representation with an intent to deceive; and (4) detrimental reliance on the false representation by the victim.'" *People v. Jory*, 443 Mich. 403, 505 N.W.2d 228, 233 (Mich.1993); *see also* MICH. COMP. LAWS § 750.218 (set forth *infra* note 9).

9. The statute provides in relevant part:

Actions for slander and libel; damages; justification; privilege; contribution; defenses prior to action for related cause.

(1) Words imputing a lack of chastity to any female or male are actionable in themselves and subject the person who uttered or published them to a civil action for the slander in the same manner as the uttering or publishing of words imputing the commission of a criminal offense.

(2)

commission of a crime loathsome disease, or disparagement of one's profession or business. *E.g., Glazer v. Lamkin,* 201 Mich.App. 432, 506 N.W.2d 570 (1993); *Croton v. Gillis,* 104 Mich.App. 104, 304 N.W.2d 820 (1981). While Michigan has indeed, via statute,[10] criminalized certain types of fraudulent conduct. Nehls fails to offer any explanation as to why the allegations set forth in the contested statements fall within the purview of the statute.[11]

As Nehls has failed to establish that his claims arise as defamation per se, he is not entitled to a presumption of damages. Accordingly, he must establish the "defamation per quod" element of special harm. Although Michigan courts have not precisely defined the terms "special harm" or "special damages" in relation to defamation claims, it is clear that such damages must be established absent comments that are defamatory per se. *See Burns v. City of Detroit,* No. 213029, 2000 Mich.App.

LEXIS 1688 at *13, 2000 WL 33403017 (Mich.Ct.App. Oct. 31, 2000) ("[P]laintiff did not establish the existence of defamatory statements that were actionable per se, and she was thus obligated to prove the existence of special damages in order to succeed on her defamation claim"). As Nehls has failed to adduce any evidence establishing the requisite damages, we affirm the district court's rulings as to the defamation claims.

## C. Conspiracy to Defame

■ The elements of civil conspiracy under Michigan law are: (1) a concerted action; (2) by a combination of two or more persons; (3) to accomplish an unlawful purpose; (4) or a lawful purpose by unlawful means. *Mays v. Three Rivers Rubber Corp.,* 135 Mich.App. 42, 352 N.W.2d 339, 341 (1984). A claim for civil conspiracy accrues when all the elements of the cause of action have occurred and

---

(a) Except as provided in subdivision (b), in actions based on libel or slander the plaintiff is entitled to recover only for the actual damages which he or she has suffered in respect to his or her property, business, trade, profession, occupation, or feelings.
[* * *]
(7) An action for libel or slander shall not be brought based upon a communication involving a private individual unless the defamatory falsehood concerns the private individual and was published negligently. Recovery under this provision shall be limited to economic damages including attorney fees.
Mich. Comp. Laws § 600.2911.

**10.** The statute provides in relevant part:

False pretenses with intent to defraud; violation; penalty; enhanced sentence based on prior convictions.
(1) A person who, with intent to defraud or cheat and by color of a false token or writing, by a false or bogus check or other written, printed, or engraved instrument, by counterfeit coin or metal that is intended to simulate a coin, or by any other false pre-

tense does 1 or more of the following is guilty of a crime punishable as provided in this section:
(a) Causes a person to grant, convey, assign, demise, lease, or mortgage land or an interest in land.
(b) Obtains a person's signature on a forged written instrument.
(c) Obtains from a person any money or personal property or the use of any instrument, facility, article, or other valuable thing or service.
(d) By means of a false weight or measure obtains a larger amount or quantity of property than was bargained for.
(e) By means of a false weight or measure sells or disposes of a smaller amount or quantity of property than was bargained for.
Mich. Comp. Laws § 750.218.

**11.** The Court has no duty to construct arguments to support Nehls' position. *See United States v. Watkins,* 179 F.3d 489, 500–01 (6th Cir.1999) (explaining that a party has a "duty to point to the parts of the record that support his position and also to present arguments in sufficient detail to show how they support his position").

the plaintiff knew or should have known of the occurrence. *See id.* at 342.

As properly noted by Appellees, a conspiracy claim is not cognizable absent a cognizable underlying tort. *See Admiral Ins. Co. v. Columbia Cas. Ins. Co.,* 194 Mich.App. 300, 486 N.W.2d 351, 358–59 (1992). In the instant action, Nehls has failed to establish a cognizable defamation claim; therefore, the conspiracy claims must also fail. Though not for the reasons stated by the district court, we affirm its ultimate ruling as to the conspiracy claims. *See Brown v. Tidwell,* 169 F.3d 330, 332 (6th Cir.1999) (explaining that "[t]his court can affirm a decision of the district court on any grounds supported by the record, even if different from those relied on by the district court").

### D. Leave to Amend

■ In the instant action, the only claim presented in the proposed third amended complaint not disposed of above is a breach of contract claim. Under Michigan law, a breach of contract claim accrues "when the promisor fails to perform under the contract." *Cordova Chem. Co. v. Dep't of Natural Res.,* 212 Mich.App. 144, 536 N.W.2d 860, 865 (1995). The statute of limitations for a contract action is six years. *See* MICH. COMP. LAWS § 600.5807(8).

Here the breach of contract claim is predicated upon the publication of "The Kalellis Statement and The Barker Press Statement," which Nehls asserts is a breach of the College's duty to maintain the confidentiality of Nehls' student disciplinary records. The "Kalellis Statement," which in the third amended complaint is Tanenhaus' email version of Kalellis' January 6 statement, clearly is not a release of student disciplinary records. A claim predicated upon the 1991 statement, even if properly regarded as a release of student records, is barred by the six year

statute of limitations. Based on the foregoing, we find no abuse of discretion in the district court's failure to rule on Appellant's motion for leave to file a Third Amended Complaint.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of Appellees' motion to dismiss and motion for summary judgment. We further AFFIRM the denial of Appellant's motion for summary judgment and find no abuse of discretion in the district court's failure to rule upon Appellant's motion for leave to file a third amended complaint.

ROGERS, Circuit Judge, Concurring.

I agree substantially with the majority. In particular, I agree that the January 6 and January 8 statements by Kalellis, neither of which contains an allegation of "fraud," have not been shown to constitute defamation per se, nor do they sufficiently imply a crime so as to amount to defamation per se. While the January 6 statement indicates that Nehls solicited funds from local businesses without authority on behalf of the college, and even the college does not contend that Nehls did that, such activity is not the same as larceny by false pretenses, and was not stated to be "fraud."

I write separately to add the following qualifications. It is true that the 1991 Barker press release referred to "Mr. Nehls' fraudulent actions." J.A. 383. Nehls argues that the January 8 statement passed on to Tanenhaus (the reporter for *Vanity Fair*) parts of the Barker press release. It is not necessary to decide whether the Barker press release could be considered defamatory per se, because the Barker press release was made more than the statute of limitations period before suit, and the January 8 statement did not pass on the reference to "fraudulent actions."

It is also true that the *Vanity Fair* article used the word "defrauded" and Nehls argues that the *Vanity Fair* statement resulted from the January 6 and 8 statements. It is also unnecessary to decide whether the *Vanity Fair* statement could be considered defamatory per se, because Nehls did not sue *Vanity Fair*, and the "defrauded" component of the *Vanity Fair* article was not the natural and probable result of the January 6 or 8 statements. *See Tumbarella v. Kroger Co.*, 85 Mich.App. 482, 271 N.W.2d 284, 290 (1978).

With these understandings, I concur in the majority opinion.