NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0028n.06

No. 18-1386

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MARKS ONE CAR RENTAL, INCORPORATED; MARKS ONE, LLC, dba Marks One Collision; MAHER WAAD, | ) ) ) ) | **FILED** Jan 18, 2019 DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |
| AUTO CLUB GROUP INSURANCE COMPANY, et al., | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| Defendants, | ) ) | |
| FARMERS INSURANCE EXCHANGE, | ) ) | |
| Defendant-Appellee. | ) ) | |

BEFORE:    COLE, Chief Judge; SUHRHEINRICH and MOORE, Circuit Judges.

SUHRHEINRICH, Circuit Judge.    Maher Waad, Marks One Car Rental, Inc., and Marks One Collision (collectively, "Plaintiffs"), sued Defendant Farmers Insurance Exchange ("Farmers"), for statements Farmers' employees allegedly made regarding fraudulent insurance claims from Plaintiffs' businesses. The district court granted summary judgment to Farmers on all claims because Plaintiffs did not prove any actual damages stemming from the alleged statements. On appeal, the sole issue is whether the alleged statements, accusing Waad and Marks One Collision of insurance fraud and forgery, are defamation per se that do not require Plaintiffs to prove damages. Because Plaintiffs have not set forth evidence that these statements are defamatory per se under Michigan law, we **AFFIRM**.

## I.    BACKGROUND

### A.  Facts

Maher Waad owns Marks One Collision, which repaired vehicles insured by Farmers. Waad also owns Marks One Car Rental, which as the name implies, rents cars. Put simply, there is no love lost between Waad and his businesses and Farmers. Waad alleges that Farmers' adjusters criticized him with racial epithets and tried to engage him in a physical altercation at Marks One Collision. Waad claims that this racial animus was the basis for the events leading to this appeal.

In late 2013, Farmers' employees Allen Keller and Scott Wood began investigating Marks One Collision. They inspected nine vehicles repaired at Marks One Collision and compared the repairs performed with the estimates submitted to Farmers for reimbursement. For example, Marks One Collision submitted estimates that it would replace certain parts on customers' cars— side door panels, a radiator, an AC condenser, and a hood, among others—but investigation revealed that Marks One Collision left the original, broken parts on the cars and still collected payment from Farmers. In January 2014, Keller and Wood published an 81-page report containing their findings entitled "Investigation into the Matter of Marks One Collision" (the "Report"). The Report concluded that Plaintiffs were engaging in insurance fraud by charging Farmers, on average, 36% above the estimated amount for repairs. The Report also concluded that five vehicle owners said their names were forged on checks by Marks One Collision, and that two other owners were not sure if the signatures on these checks were, in fact, their signatures.

While preparing the Report, Keller and Wood interviewed at least nine customers from Marks One Collision. Plaintiffs alleged that, because of this racial animus, Farmers' employees made statements during the interviews accusing Plaintiffs of "engag[ing] in fraudulent insurance

schemes and the criminal act of forgery." In their complaint, Plaintiffs attached affidavits from four customers to whom these statements were made.

One customer, Melody Garvin, said that two detectives came to her home and told her that Waad "was ripping off paying customers by writing enhanced damage estimates." Garvin also stated that a Farmers' agent visited her place of work and "insisted that [she] sign an affidavit alleging that a check [she] had written was forged, even though this was untrue." Another customer, Sherell Jones, stated that Farmers' employee Tom Berry told her "that Maher Waad had a reputation of committing insurance fraud and was under investigation for his business practices." Jones also stated that Berry "insinuated that Maher Waad had forged my name on a t[wo]-party check" and told her that she was a "crime victim." A third customer, Linda Green, stated that Berry and Keller came to her home because they had been receiving "lots of complaints" about Marks One Collision and that they had inspected another customer's car and determined "the wheels and tires were dangerous and defective." A fourth customer, Catherine Jackson, stated that a Farmers' insurance adjuster called her and "alleged Marks One Collision was engaging in fraud and dishonest business practices."

Farmers eventually submitted the Report to Macomb County law enforcement under MICH. COMP. LAWS § 500.4507. On April 23, 2014, Channel 4 – WDIV in Detroit reported that Marks One Car Rental had been "busted for insurance fraud." Waad was arrested and later charged as part of the raid.[1] Plaintiffs believe that someone from Farmers tipped off Channel 4. After the

---

[1] Waad was charged with racketeering and four counts of larceny by false pretenses. *People v. Waad*, No. 326568, 2016 WL 3088182, at *2 (Mich. Ct. App. May 31, 2016). Waad was bound over for trial by a Macomb County district court. *Id.* at *1. In support of the false pretenses claims, the district court found probable cause that Waad had promised four customers at Marks One Collision "that their vehicles would be repaired in a professional manner, in accordance with their policy and standards of the industry." *Id.* at *2. A Macomb County circuit court quashed the bindover, concluding that the district court had abused its discretion. *Id.* at *1. The Michigan Court of Appeals affirmed the circuit court's decision because nothing in the record supported the prosecution's assertion that Waad made these representations to the four customers. *Id.* at *2–3. In two cases related to this one, Waad sued Farmers, two Farmers' employees, and assorted Macomb County law enforcement officials and prosecutors for malicious

Report and Channel 4 news coverage, a deal for Marks One Car Rental to expand at Detroit Metro Airport fell through.

## B. Procedural History

Based on these alleged statements made during the interviews with Plaintiffs' customers, Plaintiffs brought six claims against Farmers: (1) tortious interference with business relationship; (2) defamation (including defamation per se); (3) violation of the Michigan Consumer Protection Act; (4) civil conspiracy; (5) unlawful discrimination under 42 U.S.C. §1981; and (6) conspiracy under 42 U.S.C. §1985(3).[2] The gravamen of Plaintiffs' complaint was that, under MICH. COMP. LAWS § 500.4501 *et seq.*, Farmers was allowed to investigate insurance fraud and release the information to any "authorized agency,"[3] but that the comments to its customers and the alleged tip to Channel 4 were false accusations of criminal conduct that caused them to lose business. In support of their complaint, Plaintiffs provided the aforementioned affidavits and asserted that these customers would stop using their businesses because of Farmers' statements.

The district court granted Farmers' motion for summary judgment on all claims. On the defamation claim, the district court held that Plaintiffs did not suffer any damages due to the alleged statements. During their depositions, Jones and Green testified that they would continue to use Marks One Car Rental and Marks One Collision, respectively. Garvin testified that she was

---

prosecution, false arrest, and false imprisonment relating the raid and Waad's arrest. An appeal from the district court's final judgment with respect to Farmers and its employees is also before this panel. *See Maher Waad, et al v. Farmers Insurance Exchange, et al*, Case No. 18-1588. Notably, nothing in the Michigan Court of Appeals decision relates to the truth or falsity of the assertions from the Report.

[2] Plaintiffs also brought the same claims against Auto Club Group Insurance Company, Bristol West Insurance Company, 21st Century Insurance Company, Citizens Insurance Company of America, Foremost Insurance Company Grand Rapids, and Geico General Insurance Company. The district court dismissed the claims against all other defendants except Farmers prior to granting summary judgment to Farmers. Plaintiffs do not appeal the dismissal of their claims against the other defendants.

[3] "Authorized agency" is defined as "the department of state police; a city, village, or township police department; a county sheriff's department; a United States criminal investigative department or agency; the prosecuting authority of a city, village, township, county, or state or of the United States; the office of financial and insurance regulation; or the department of state." MICH. COMP. LAWS § 500.4501(a).

satisfied with the work done on her car, but that she would not go to Plaintiffs' businesses again because of what she saw about the police raid on television. The district court found that Plaintiffs did not produce any evidence connecting the police raid with any statements made by Farmers. Finally, Jackson testified that she would not return to Plaintiffs' businesses because their rental car prices had increased, and that her boyfriend's car was repaired there and "is falling apart now." For these reasons, the district court ruled that Plaintiffs had not demonstrated any actual damages to their business related to the disputed statements, a requirement for defamation under MICH. COMP. LAWS § 600.2911(2)(a).

Further, the district court held that Plaintiffs failed to provide evidence of other business damages, including a general loss of business and the loss of the Detroit Metro Airport contract. The record was also devoid of any evidence—sans speculation—that Farmers re-published the Report or the disputed statements to any other person. Additionally, the district court pointed to unrebutted testimony from Berry that he did not tip Channel 4 as to the raid on Plaintiffs' businesses. Waad even admitted that he had no evidence that anyone from Farmers informed Channel 4.

Finally, the district court granted summary judgment to Farmers on the defamation per se claims for three reasons. First, the district court held that the allegations of Waad's criminal activity concerned his business, so he had to prove actual damages. Second, the district court held that the alleged statements did not even rise to the level of defamation per se because they were merely "[e]xaggerated language used to express an opinion, such as 'blackmailer,' traitor' or 'crook'" that did not become actionable defamation "merely because it could be taken out of context as accusing someone of a crime." *See Kevorkian v. Am. Med. Ass'n*, 602 N.W.2d 233, 237 (Mich. Ct. App. 1999) (alteration in original) (citation omitted). Third, the district court held that

the allegations of forgery were not defamatory because Plaintiffs' customers testified at their depositions—contrary to their initial affidavits—that they did not give Plaintiffs permission to sign their checks.

The district court did not address Farmers' defense that the statements were true, which also would have been a basis for defeating Plaintiffs' defamation claim.[4]

## II.    ANALYSIS

The sole issue Waad and Marks One Collision present in their statement of issues is whether the district court erred by granting summary judgment on Maher Waad's claim of defamation per se when the alleged statements at issue are accusations of crimes that do not require proof of actual damages under MICH. COMP. LAWS § 600.2911(1).    Therefore, Marks One Collision forfeited review of all of its claims, and Maher Waad forfeited review of all claims but his defamation per se claim.  *See* Fed. R. App. P. 28(a)(5); *United States v. Calvetti*, 836 F.3d 654, 664 (6th Cir. 2016).  Marks One Car Rental did not appeal.

### A.  Standard of Review

We review de novo the district court's grant of summary judgment.  *Luna v. Bell*, 887 F.3d 290, 297 (6th Cir. 2018).  Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "For this determination, we review all facts in a light that is most favorable to, and draw all reasonable inferences in favor of, the nonmoving party."  *Byrd v. Tenn. Wine & Spirits Retailers Ass'n*, 883 F.3d 608, 613 (6th Cir.) (citation omitted), *cert. granted*, 139 S. Ct. 52 (2018).

---

[4] It is unclear why the district court did not discuss the truth of the claims.  During discovery, Plaintiffs did not produce repair records or invoices, and the district court entered an order under Fed. R. Civ. P. 37(b)(2)(A)(ii) prohibiting Plaintiffs "from introducing into evidence any repair documents or invoices concerning [Jones, Green, Garvin, and Jackson] and Claims other than those that are in the Farmers Report."  Because the evidence in the Report went unchallenged, it would be deemed true for purposes of summary judgment under Rule 56.

But the nonmoving party may not use "speculation, conjecture, or fantasy" to avoid summary judgment. *K.V.G. Props., Inc. v. Westfield Ins. Co.*, 900 F.3d 818, 823 (6th Cir. 2018) (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). Instead, it must put forth more than "a scintilla of evidence" that would allow a jury to reasonably find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### B. Applicable Law

This is a defamation action under state law, and the parties agree that Michigan law applies. "On questions of state law, this Court is bound by the rulings of the state supreme court." *In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, 756 F.3d 917, 937 (6th Cir. 2014) (citing *Bradley v. Gen. Motors Corp.*, 512 F.2d 602, 604–05 (6th Cir.1975)). "If the state's highest court has not yet addressed the issue presented, we must predict how the court would rule by looking to all available data, including decisions of the states' appellate courts." *Id.* (citing *Allstate Ins. Co. v. Thrifty Rent–A–Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001)).

### C. Michigan Defamation Law

Under Michigan law, a plaintiff alleging defamation must prove four elements:

> (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication.

*Mitan v. Campbell*, 706 N.W.2d 420, 421 (Mich. 2005) (per curiam) (citations omitted). Generally, "words charging the commission of a crime are defamatory per se, and hence, injury to the reputation of the person defamed is presumed to the extent that the failure to prove damages is not a ground for dismissal." *Burden v. Elias Bros. Big Boy Rests.*, 613 N.W.2d 378, 381 (Mich. Ct. App. 2000) (citations omitted); *see also* MICH. COMP. LAWS § 600.2911(1) ("Words imputing

a lack of chastity to any female or male are actionable in themselves and subject the person who uttered or published them to a civil action for the slander in the same manner as the uttering or publishing of words imputing the commission of a criminal offense."). However, defamation per se only excuses a plaintiff from proving actual damages; the plaintiff must still prove the first three elements of defamation. *Thomas M. Cooley Law Sch. v. Doe 1*, 833 N.W.2d 331, 345 (Mich. Ct. App. 2013).

The parties dispute the scope of defamation per se under the Michigan defamation statute. Plaintiffs assert that, under § 600.2911(1), allegations of crimes that involve moral turpitude or subject a party to an infamous punishment are defamatory per se. In their view, the allegations that Waad personally committed the crimes of forgery and insurance fraud fall into that category, so Waad does not need to prove special damages.[5] According to Plaintiffs, the district court erred by treating all of Waad's damages as business damages, which require proof of actual harm. Plaintiffs assert that the alleged statements against Waad personally must be treated separately from the statements against Marks One Collision.

On the other hand, Farmers asserts that statements concerning a business cannot be defamatory per se and therefore require proof of actual damages. *See* § 600.2911(2)(a) (stating that "in actions based on libel or slander the plaintiff is entitled to recover only for the actual damages which he or she has suffered in respect to his or her property, business, trade, profession, occupation, or feelings"). According to Farmers, "the alleged statements all concern the manner and quality of work performed by Maher Waad and his business, Marks One Collision." In Farmers' view, Plaintiffs are "conflating statements made, or questions asked, about a business during an investigation with allegations of criminal conduct."

---

[5] As this court has previously explained, Michigan courts have not provided a specific definition for special damages. *Nehls v. Hillsdale Coll.*, 65 F. App'x 984, 991 (6th Cir. 2003).

More succinctly, the parties dispute whether statements accusing an individual of committing a crime in the operation of the individual's business are actionable as defamation per se under Michigan law. Farmers cites two cases that require proof of actual damages, but both cases involve businesses—not individuals—that were allegedly defamed. *See Cofessco Fire Prot., L.L.C. v. Steele*, Nos. 290959, 292357, 2010 Mich. App. LEXIS 1896 (Mich. Ct. App. Oct. 7, 2010) (holding that plaintiff Cofessco, a limited liability company, proved a causal connection between allegedly defamatory statements and actual economic damages incurred as a result); *Champion Labs., Inc. v. Parker-Hannifin Corp.*, 616 F. Supp. 2d 684, 698 (E.D. Mich. 2009) (granting summary judgment to defendant on business defamation claim because plaintiff corporation did not provide evidence of actual damages). Thus, these cases are not applicable to this situation.

Michigan law on this point is not only unclear, but contradictory. At common law, Michigan used to recognize "words . . . injurious to a person in his business" as actionable per se. *See, e.g.*, *Henkle v. Schaub*, 54 N.W. 293, 295 (Mich. 1893); *Mains v. Whiting*, 49 N.W. 559, 562 (Mich. 1891). But the Michigan legislature appears to have abrogated *Henkle* and *Mains*. *See* § 600.2911(2)(a) ("[I]n actions based on libel or slander the plaintiff is entitled to recover only for the actual damages which he or she has suffered in respect to his or her property, business, trade, profession, occupation, or feelings."). Yet after the passage of § 600.2911(2)(a), some Michigan courts still apply *Henkle*. *See, e.g.*, *Heritage Optical Ctr., Inc. v. Levine*, 359 N.W.2d 210, 212 (Mich. Ct. App. 1984); *see also Savage v. Lincoln Ben. Life Co.*, 49 F. Supp. 2d 536, 541 (E.D. Mich. 1999) (quoting *Heritage Optical*). Indeed, we are not the only court to recognize the inherent contradictions in the Michigan defamation statute. *See, e.g.*, *Daneshvar v. Kipke*, 266 F. Supp. 3d 1031, 1055 (E.D. Mich. 2017) (explaining "the holdings of Michigan courts have been

mixed"); *Heike v. Guevara*, 654 F. Supp. 2d 658, 676 n.5 (E.D. Mich. 2009) ("It has been suggested that in Michigan, 'the common-law list of actions that constituted defamation per se has been replaced by the significantly more narrow statutory provisions.'" (quoting 2 Mich. Law & Practice, Torts, § 3.68 (2d ed. 2004)).

In any event, we need not resolve this question of Michigan law because the district court reached the correct result for another reason, and "[w]e may affirm a decision of the district court for any reason supported by the record, including on grounds different from those on which the district court relied." *Thomas v. City of Columbus, Ohio*, 854 F.3d 361, 364 (6th Cir. 2017) (internal quotation marks and citation omitted). Thus, for the purposes of this appeal, we assume without deciding that a party may bring defamation per se claims for statements made imputing criminal activity to his business.

### D. Defamation Per Se Statements

Plaintiffs claim that the statements alleging insurance fraud and forgery to the four customers are defamatory per se. A closer examination reveals otherwise.

#### 1. Allegations of Insurance Fraud

*Linda Green*. In her affidavit, Green stated that after her wheels and tires were stolen from her car on May 8, 2013, she took her car to Marks One Collision for repair. Green further stated that in August 2013, Berry and Keller came to her house to inspect her vehicle because they had been receiving "'lots of complaints' regarding the work being performed by Marks One." In particular, Green stated that Berry told her they had inspected another woman's car and that "the wheels and tires were dangerous and defective." During her deposition, Green repeated this story. She testified that Berry and Keller wanted to look at her car because they had been receiving complaints from other customers.

However, nothing in Green's affidavit or deposition testimony mentions allegations of insurance fraud or forgery by Farmers. In fact, Green's affidavit does not even mention Waad until she stated, "I am familiar with Mr. Waad and the work he performs and know him to be reputable and do a good job." At most, Green stated that Berry and Keller "were trying to use scare tactics with me and suggest doing business with Marks One was a bad decision." Those are not allegations of criminal activity; thus, they are not defamation per se.

*Catherine Jackson and Sherell Jones.* In her affidavit, Jackson stated that she filed an insurance claim with Farmers after she was involved in a car accident on December 22, 2012. Farmers directed her to use a Farmers Insurance Direct Repair Shop. Jackson received a damage estimate from the Direct Repair Shop but instead chose to use Marks One Collision to perform the repairs. Marks One Collision's damage estimate included a replacement radiator. Thereafter, Jackson stated that she received a call from Farmers insurance adjuster Bob Depew, who told her that the radiator damage was not related to her collision; someone from Marks One Collision struck Jackson's radiator with a sprocket or wrench to cause damage. Jackson stated that Depew "alleged Marks One Collision was engaging in fraud and dishonest business practices" and that Marks One Collision billed and charged for the radiator that was never replaced.

Similarly, Sherell Jones stated in her affidavit that she used Marks One Collision to repair her car in July 2013. Jones stated that on July 15, 2013, Berry and another man (later identified as Keller) came to her house and asked to inspect her car. Jones stated that, after the inspection, Berry "stated that Maher Waad had a reputation of committing insurance fraud and was under investigation for his business practices."

These statements, if made, were not defamation per se for two reasons. First, Jackson's testimony says nothing about specific allegations of criminal activity concerning Waad, who is the

only party to appeal here. Second, § 600.2911(1) only applies to "words charging a person with a crime . . . [where] the crime involves moral turpitude or would subject the person to an infamous punishment." *Lakin v. Rund*, 896 N.W.2d 76, 79–81 (Mich. Ct. App. 2016) (quoting *Taylor v. Kneeland*, 1 Doug. 67, 72 (Mich. 1843). Plaintiffs have made no attempt to explain how these allegations involve moral turpitude or infamous punishment, and mere allegations of fraud are not sufficient. *See Nehls v. Hillsdale Coll.*, 65 F. App'x 984, 990–91 (6th Cir. 2003) (affirming grant of summary judgment on defamation per se claim based on accusations of fraud because "Michigan's defamation statute does not categorize fraud as defamation per se" and plaintiff did not explain how the fraud fit into the statute). Here, like in *Nehls*, Plaintiffs have not explained how or why the statements "Marks One Collision was engaging in fraud and dishonest business practices" or "Maher Waad had a reputation of committing insurance fraud" implicate criminal conduct that fits within § 600.2911(1). They have not identified any Michigan statutes or codes that were violated, and it is not our duty to search the Michigan insurance code and make their argument for them.[6] *Nehls*, 65 F. App'x at 991 n.11. Therefore, Plaintiffs have not established that these statements rise to the level of defamation per se, so they must prove actual damages resulting from the statements. *See id.* at 991. They did not. As such, the district court properly granted summary judgment to Farmers on the allegations of insurance fraud.

Two other reasons support this conclusion. First, Plaintiffs' reliance on the conclusions of insurance fraud as allegations of criminal activity in the Report is misplaced. By statute, Farmers had the right to send the Report to Macomb County law enforcement. MICH. COMP. LAWS § 500.4507(2). There is no evidence that Farmers published the Report to any of Plaintiffs' customers. In addition, Plaintiffs have not shown how these insurance fraud claims are false.

---

[6] For example, the Michigan Insurance Code lists at least nine different acts that qualify as a "fraudulent insurance act." *See* MICH. COMP. LAWS § 500.4503. Plaintiffs do not mention this section of the insurance code in their brief.

Although the district court took no position on the matter, the record supports the conclusion that the claims are true. During discovery, Plaintiffs did not produce repair records or invoices to rebut the Report, and the district court entered an order under Fed. R. Civ. P. 37(b)(2)(A)(ii) prohibiting Plaintiffs "from introducing into evidence any repair documents or invoices concerning [Jones, Green, Garvin, and Jackson] and Claims other than those that are in the Farmers Report." Because the evidence in the Report went unchallenged, Plaintiffs have not provided evidence to create a genuine dispute of fact that the insurance fraud allegations were false.

### 2. Allegations of Forgery

*Melody Garvin.* In her affidavit, Garvin stated that in November 2013, two men from Farmers audited the work done on her vehicle. Garvin also stated that the two men "made a big deal about a particular check that I had signed, and kept asking if it was, in fact, my signature." Garvin stated that two months later, two detectives (who did not work for Farmers[7]) told her they were investigating Marks One Collision for fraud and theft and alleged that Marks One Collision was enhancing its damage estimates. Finally, Garvin stated that another Farmers agent visited her work and "insisted that [she] sign an affidavit alleging that a check [she] had written was forged, even though this was untrue."

During her deposition, Garvin was presented with two checks bearing her signed name. Neither were in fact her signature, and she testified that she did not remember giving anyone permission to sign her name on the checks. When asked if she was concerned about the allegations of forgery, Garvin stated "I mean, it's not my signature, but, I mean, it's not my signature, but I don't think they forged my signature but, you know, how can you not forge a signature if it's not your signature . . . ."

---

[7] Although Plaintiffs attempt to portray these detectives as Farmers employees, Garvin identified them as police officers "from whatever county Marks One is in."

None of these statements rises to the level of defamation by Farmers. First, the two Farmers' employees in November 2013 did not accuse Waad of forgery. Read literally, they asked if Garvin's signature was on the check. Second, the two detectives that came to Garvin's home two months later were not Farmers' employees. Third, with respect to the allegation of forgery, Garvin's later deposition testimony proves that she did not sign the checks at issue, so someone else did (which sounds like forgery). Garvin also testified that she did not remember giving anyone permission to sign her name. Even if Garvin had given Marks One Collision power of attorney to sign her name, Plaintiffs have not proved that the Farmers' employees were negligent in believing that Garvin's signature was forged and informing her of their belief. *See Mitan*, 706 N.W.2d at 421 (requiring plaintiff to prove "fault amounting at least to negligence on the part of the publisher"). During her deposition, Garvin authenticated a recording between herself and a Farmers' employee in which Garvin explained that it was not her signature on the checks. Thus, the Farmers' employees had a sound basis for making the statements. And, notably, in their response to Farmers' motion for summary judgment, Plaintiffs did not produce a power of attorney or any other evidence proving that Waad or Marks One Collision had authority to sign on Garvin's behalf.

In summary, the first two alleged statements to Garvin did not allege any crime and were not made by Farmers' employees, respectively. The final alleged statement regarding the affidavit of forgery was supported by the fact that Garvin did not actually sign the checks. Plaintiffs have not put forth any evidence to create a genuine dispute of material fact that these alleged statements were false or that the Farmers' employees were negligent in making them.

*Sherell Jones.* According to Jones, on the same visit from Berry and Keller on July 15, 2013, Berry "insinuated that Maher Waad had forged [her] name on a [two]-party check with the

body shop" and "would not leave [her] residence until [she] signed [an] Affidavit that [she] did not sign the check and that Marks One was engaging in forgery." Jones stated that she granted Maher Waad power of attorney to sign her name on the two-party check.

Defendants have rebutted Jones' initial affidavit attached to Plaintiffs' complaint. Jones signed a different Affidavit of Forgery in which she attested to the truthfulness of her statement that Marks One had forged her signature. And later, at her deposition, Farmers' attorney played back a recording from Keller's meeting with Jones. Jones authenticated the recording, in which she stated that she did not sign two checks, did not give anyone permission to sign her name on the checks, and did not remember signing any forms giving Marks One power of attorney to sign her name on any checks. Instead, Jones stated that Marks One "said they would call me when the checks came in to sign."

In response, Plaintiffs produced an Auto Body Repair Order for work done on Jones' car. The Repair Order, signed on January 10, 2014, purports to give Marks One Collision power of attorney to sign checks on Jones' behalf. However, the Repair Order was signed nearly six months after that initial July 2013 meeting where the supposed defamatory statements occurred.

In summary, Plaintiffs failed to put forth evidence that Farmers' employees negligently accused Waad and/or Marks One Collision of forgery. Plaintiffs produced only Jones' affidavit, which states that Berry "insinuated" that Waad and Marks One had forged her signature. But the recording transcript proves otherwise. Jones testified that she did not sign the checks and did not give anyone permission to sign on her behalf.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.